In re MARRIAGE OF SANDRA MAYE STEGBAUER, Petitioner-Appellee, and FREDERICK LOUIS STEGBAUER, Respondent-Appellant.

Fourth District   No. 15736

Opinion filed May 16, 1980.—Rehearing denied June 12, 1980.

George L. Chesley, of Bloomington (DePew, Grimes & Chesley, of counsel), for appellant.

A. J. Rudasill, of Herrick, Rudasill & Moss, of Clinton, for appellee.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

The respondent appeals from the trial court's judgment order, entered July 9, 1979, on the petitioner's request for maintenance brought under section 504 of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 504). The trial court granted the petitioner maintenance in the amount of 25% of the respondent's net income for an indeterminate length of time. The respondent argues that the evidence does not support the trial court's decision, that the trial court improperly defined "income" and "net income," and that the maintenance order should have specified a fixed amount of money payable over a definite period of time.

We review to ascertain whether the court properly considered the statutory guides for fixing maintenance. The Stegbauers were married in 1957 and separated in late 1977; both are in their early forties. Their only child, a daughter, was born in 1959. Fred was a golf professional at a country club until late 1977. He earned $14,000 per year. In 1978 he bought a 39% interest in a Florida golfing equipment store. Sandra has been operating an interior decorating business for the past seven or eight years. Fred went to junior college for two years; Sandra attended business college for one year. Sandra's petition for divorce, filed March 14, 1978, was granted June 23, 1978. The parties filed a property settlement August 4, 1978. This agreement gave Fred the 1976 Oldsmobile, the Florida condominium and all its furnishings, and his own clothing and personal effects. Sandra received the 1967 Thunderbird, the home in Bloomington and all its furnishings, a policy of insurance on Fred's life in the sum of $50,000, and her own clothing and personal effects. Each party paid his or her own attorney's fees; Fred was not required to pay any child support.

Sandra petitioned for maintenance May 31, 1978. Sandra's affidavit supporting the motion showed that her daughter, with whom she lives, contributed $175 per month. The Bloomington home was worth $85,000,

subject to a $22,000 mortgage. The Thunderbird had been wrecked but still ran. Home furnishing were worth $5,000, and furnishings and samples used in her business $2,000. She owed her parents $4,000, and a Bloomington bank $5,000. Her business lost $750 in 1977 but earned about $6,000 during 1978, or approximately $100 per week. Sandra estimated her monthly expenses to be about $1,300.

Fred's affidavit showed that the Florida condominium was worth $48,000; when the parties were divorced it was subject to a $5,000 mortgage, but since then Fred had mortgaged it for $30,000 more to help him buy his share in the golfing equipment store. Besides the mortgage, he owed $9,000 to various other creditors. His monthly expenses were about $1,300 and his gross pay $300 per week, leaving $220 after taxes.

Both Fred and Sandra testified at the hearing held May 11, 1979, on the petition for maintenance. The substance of their testimony parallels the information given in the affidavits, with the additional facts that Sandra had unsuccessfully applied for one job since the divorce and was trying to sell the home. Fred testified that because the golfing equipment store had lost money the year before, he was being refunded all his withheld tax and so averaged $300 net a week.

■■ The affidavits and testimony revealed that although Fred and Sandra had similar amounts of monthly expenses, her income was only about one-third his. Fred is now earning slightly more than he did as a golf professional, while Sandra will need to reduce her standard further unless she borrows more or obtains maintenance. The award of 25% of Fred's net income will make it more difficult for him to meet his monthly expenses, but even after that reduction he will still be earning more than Sandra. We find no error in the award.

The respondent also argues that the terms of the court's order are too vague; specifically, he argues that the court defined "income" too unclearly to guide him when he sells an asset. Net income could refer to the entire amount of proceeds from the sale, or the sale price minus the basis. Also, the court's definition of income would require him to give over the proceeds from the sale of marital property that had been divided according to the parties' stipulation. The order says:

> "2. For purposes of this order the word 'income' shall be interpreted to include all income from any source in the form of money or property that becomes available to the respondent for his support, including, but not limited to, salary, wages, interest, distributions of corporate income, capital gains and income tax refunds, state and federal."

"Net income" is defined as income less taxes.

■■ Sandra now concedes to limit "net income," within the meaning of the maintenance decree, derived from the sale of property to the capital

gains achieved on the sale. The basis is the value at the time that the parties entered their stipulated property settlement, August 4, 1978. We thus affirm the maintenance order's definition of "income" and "net income" as modified by the concession.

■ The respondent also argues that the court should have set a definite period of time for the payment of maintenance. Yet family support payments—combining maintenance and child support—have been awarded for an indefinite term. (*Schuppe v. Schuppe* (1979), 69 Ill. App. 3d 200, 387 N.E.2d 346.) Of course, either spouse may petition under section 510 of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 510) to modify or terminate the maintenance award, should circumstances change. Thus, an award for an indefinite period of time is not necessarily an interminable award.

■ Finally, the respondent argues that the trial court should have imposed an award for a fixed amount of money rather than a percentage of his income. A percentage award for child support with a fixed minimum was approved in *Smith v. Smith* (1979), 78 Ill. App. 3d 80, 397 N.E.2d 50. Here the trial court did not set a minimum, and so the award will decline should the respondent's income decrease. The advantage of a percentage award is that it is self-adjusting, obviating the section 510 petition for modification in case the respondent's income is reduced.

Affirmed as modified.

WEBBER, J., concurs.

Mr. JUSTICE TRAPP, dissenting:

The decree entered by the trial court makes no findings of fact, or of a sum certain or even approximate as to the needs of the wife. There is no determination by decree of the husband's ability to pay other than that he received a salary and was a corporate officer.

The decree provides in part:

"1. That the respondent pay or caused to be paid to the petitioner as maintenance 25 per cent of all net income hereafter received by him.

2. For purposes of this order the word 'income' shall be interpreted to include all income from any source in the form of money or property that becomes available to the respondent for his support, including, but not limited to, salary, wages, interest, distributions of corporate income, capital gains and income tax refunds, state and federal."

Section 503(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 503(a)(3)) provides that "property

acquired by a spouse after a judgment of legal separation" shall be nonmarital property. Subparagraph 5 also provides that the "increase in value of property acquired before the marriage" shall be nonmarital property. The last provision contemplates appreciation in value or capital gains as to nonmarital property. It is difficult to find a rational reason for determining that such appreciation as to nonmarital property acquired after dissolution should have a different status or standing. The terms of the decree effects that result.

By its terms, the amount of maintenance is permanently measured by a percentage of income received by the husband. Thereafter, if he acquires nonmarital property any capital gains automatically increases the maintenance without regard to the financial resources or the needs of the wife. The same is true as to income developed after the dissolution and without regard to the standard of living established during the marriage.

The issue should not be disregarded or minimized by the wife's argument that under the present circumstances the husband is only required to pay $75 per week. The point is that there is no established bench mark determining the needs of the wife as measured by the standard of section 504(b) of the Act. Ill. Rev. Stat. 1979, ch. 40, par. 504(b).

The wife's argued analogy to the authority of *Robbins v. Robbins* (1976), 40 Ill. App. 3d 653, 353 N.E.2d 110, and *Smith v. Smith* (1979), 78 Ill. App. 3d 80, 397 N.E.2d 50, is not complete. In each, the percentage formula was directed to child support. The term of the obligation created is limited by the minority of the child, rather than permanent. In *Robbins*, the quantum of need was established at $175 per week. The husband was directed to pay $80 per week plus 15 per cent of earnings in excess of an established amount. In *Smith*, the needs for child support were established at $630 per month. The husband was directed to pay the greater of $250 per month, or 20 percent of his net income. Upon the evidence, the latter requirement would call for payments of $268 per month.

It is apparent that the income and prospects of each party is uncertain and unpredictable and that it may be difficult to meet the present needs of each. The wife has been awarded somewhat more than one-half of all that which was accumulated during the marriage. Each party starts anew from the decree date. Such facts produce the necessity that as to nonmarital income and property there be a bench mark which determines the needs and standard of living to which the wife is entitled under the provisions of section 504(b) of Act. Ill. Rev. Stat. 1979, ch. 40, par. 504(b).

By its terms, I would hold the decree to be an abuse of discretion.