*In re* MARRIAGE OF VIRGINIA PARELLO, Petitioner-Appellee, and ANTHONY PARELLO, Respondent-Appellant.

First District (1st Division)    No. 79-2436

Opinion filed August 25, 1980.

George S. Bellas, of Sidney C. Kleinman, Ltd., of Chicago, for appellant.

Helen Shapiro and Lee J. Schwartz, both of Lapin & Levine, Ltd., of Chicago, for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

This appeal is brought by respondent, Anthony Parello, from a judgment of dissolution of marriage and a supplementary order amending that judgment entered by the circuit court of Cook County on November 1, 1979, and December 13, 1979, respectively. This appeal raises the following issues:

(1) whether the trial court erred in entering a written judgment for dissolution which varied from its oral announcement of the judgment;

(2) whether the trial court erred in amending the judgment based on a second appraisal of the marital residence which it ordered *sua sponte* during its consideration of respondent's motion to vacate;

(3) whether the trial court erred in permitting petitioner to remain in the marital residence by buying out her husband's interest in the house; and

(4) whether the trial court erred in awarding maintenance.

We affirm in part and modify in part.

Virginia Parello (hereinafter petitioner) filed a petition for dissolution on May 22, 1978, based on mental cruelty. In the petition, she prayed for sole ownership and possession of the marital residence, maintenance, and certain injunctive relief pertaining to the protection of the marital property during the pendency of the suit. Respondent filed a counterpetition for dissolution which also sought sole use, possession and ownership of the marital residence. On July 17, 1979, in an uncontested hearing the trial court granted the dissolution on petitioner's petition.

The record of the hearing held relative to the disposition of the marital property discloses that the parties were married for 36 years and are the parents of two adult children. At the time of the hearing, the respondent was 60 years old and the petitioner was 53 years old. The parties' primary item of marital property, their marital residence, was owned in joint tenancy unencumbered by any mortgages or liens. A July 21, 1978, appraisal of the residence set its value at $38,675. Additional marital property included four certificates of deposit totalling $18,000, a savings

account containing $480.27, and a municipal employees' pension fund for which respondent was eligible. The specifics of the pension fund are not included in the record, although it was noted at trial that respondent's employee contribution equalled approximately 8 3/4 percent of his gross pay.

Petitioner was not employed at the time of the hearing. She testified that she had no special skills or training and that her formal education had terminated after 1½ years of high school. She has been employed sporadically during her marriage in a variety of jobs which included screw sorter and crossing guard. Her last employment was in a federally funded youth program. This job terminated in approximately 1966 or 1967. She also testified that she has been actively associated with a political party and that respondent obtained his job through her hard work with that party. She has not asked that party for a job for herself, although she said she could handle any job they might give her. She further stated that she is under a doctor's care for treatment of hypertension, emphysema, arthritis, and rheumatoid arthritis and is prevented from working at the present time because she is "crippled up." She has lived in her neighborhood all of her life and in her home for 19 years. She stated that she would be afraid to live by herself elsewhere, which is why she wants possession of the marital residence. She also stated that her daughters live very near to her. She relies solely on public transportation to get around because she does not drive. She testified at the trial that she had not been able to obtain a mortgage to purchase respondent's interest in the marital residence.

Respondent testified that he has been employed by the City of Chicago as an operating engineer for over 17 years. His monthly net income, including overtime pay, was estimated to be approximately $1,460. His 1978 income tax return, showing a net income of $22,622, revealed that he also realized income from various part-time jobs. Respondent explained, during the hearing, that he was no longer doing any part-time jobs. He estimated that his monthly expenses were somewhat greater than his 1978 estimate of $1,087 because it did not include temporary support payments of $240 or the amount paid to his daughter for the preparation of his meals and for certain housekeeping chores. Respondent denied that his wife was an invalid.

On August 9, 1979, after hearing all of the testimony, the trial court made an oral announcement of its judgment and findings. Based on the fact that the parties could not reach a property agreement, the trial judge ordered the marital residence to be sold and the net proceeds divided equally. The trial court further ordered respondent to give 35% of his net income from his employment and 35% of any other income from other sources to petitioner as maintenance. The court also provided a set formula for the amount petitioner would receive from respondent's pension. In reaching its decision, the trial court noted that there was a discrepancy in

the record as to respondent's monthly earnings in that a payroll exhibit showed respondent's take-home pay to be $1,678 rather than the $1,460 testified to by respondent.

On October 19, 1979, respondent filed a motion to reconsider, alleging that the trial court's finding concerning his monthly income was against the manifest weight of the evidence, that the trial court had not found petitioner unemployable, and that undisclosed marital assets existed. At this time, petitioner filed a motion for entry of judgment. On November 1, 1979, the trial court was informed by petitioner's counsel that she was now able to buy out respondent's interest in the marital residence. The trial court denied respondent's motion to reconsider and entered judgment. In contrast to the oral judgment, the written judgment ordered respondent to quit-claim all of his right, title, and interest in the marital residence to his wife upon receipt of 50% of the appraised value of the residence, $19,337.50. Although the trial court informed respondent's counsel that his motion to reconsider could stand as a motion to vacate, a separate motion to vacate was subsequently filed. It alleged an inconsistency between the judgment signed by the trial court and the oral announcement of the judgment. On December 13, 1979, the trial court amended the judgment for dissolution to reflect the finding of a second appraisal. That appraisal found that the fair market value of the residence was now $36,000 due to certain winter damages incurred to the residence. At the same time, the trial court denied respondent's motion to vacate. A timely notice of appeal was filed on December 20, 1979.

The respondent's initial argument is that the trial court erred in entering a written judgment which differed from its oral announcement of the judgment. Respondent acknowledges that the trial judge ordered counsel to prepare a written draft of the judgment for him to sign and that consequently the judgment was not final until the signed judgment was filed. (Ill. Rev. Stat. 1977, ch. 110A, par. 272; *Stewart v. Stewart* (1975), 35 Ill. App. 3d 236, 341 N.E.2d 136; *Pope v. Pope* (1973), 12 Ill. App. 3d 800, 299 N.E.2d 161.) He contends, however, that neither the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 1 *et seq.*) nor the Supreme Court Rules (Ill. Rev. Stat. 1977, ch. 110A, par. 1 *et seq.*) permit the trial court to enter an order which varies from its oral rendition. He further contends that, even if the oral judgment could be altered, the trial court could not make the instant alteration based solely on the bare statement of petitioner's counsel that petitioner could now obtain the financing to buy out respondent when such financing was unavailable during the trial.

● 1 There has been a continued recognition by the courts of this State that:

> "[I]n the interim between the announcement of a final judgment in which the judge requires the submission of a form of written judgment and the actual signing of the written judgment the proceedings

are in a state of temporary abeyance * * *." (*Green v. Green* (1974), 21 Ill. App. 3d 396, 402, 315 N.E.2d 324.)

In *Pope v. Pope* and *Norwood v. Norwood* (1948), 333 Ill. App. 469, 77 N.E.2d 552, it was held that, in this interim period, a trial court may consider changed circumstances and, thereafter, effectuate any change in the judgment which it determines to be proper. From the foregoing authority, it appears that the trial court was not restricted to either its oral judgment or its original findings.

■■ During the November 1, 1979, hearing on respondent's motion to reconsider, petitioner's counsel informed the court of an offer by petitioner to respondent to buy out respondent's 50 percent interest in the marital residence in lieu of selling the residence and splitting the proceeds. Counsel explained that petitioner had arranged financing in order to buy out respondent. Respondent urges that under *Dendrinos v. Dendrinos* (1978), 58 Ill. App. 3d 639, 374 N.E.2d 1016, even if the trial court could amend its judgment the testimony of counsel was hearsay and was not a proper substitute for an evidentiary hearing. From this, respondent concludes that the trial court should not have considered the foregoing statements by petitioner's counsel. We do not agree. *Dendrinos* is inapposite to the present cause as it involves serious allegations of fraud raised in a hearing on a post-trial motion. This court found that the trial court should not have denied the motion to vacate without an evidentiary hearing even though argument was offered by the parties' counsel because the allegations in the wife's petition were disputed. Here, the respondent never denied that the petitioner could obtain financing. If such a denial had been made, then it may have been proper for the trial court to require proof of financing. Moreover, it is clear from the record that, while the trial court initially ordered the property to be sold, this course of action was not its favored course of action. Accordingly, we do not think that it was improper for the trial court to consider this information and enter a written judgment consistent with it.

■■■ The respondent next urges that the trial court erred in modifying the November 1, 1979, judgment of dissolution. The power to modify a judgment rests in the sole discretion of the trial court. (*Dendrinos v. Dendrinos.*) Respondent argues that the trial court could not order an appraisal because it lacked the jurisdiction to do so under section 68.3 of the Civil Practice Act. (Ill. Rev. Stat. 1977, ch. 110, par. 68.3.) A trial court has jurisdiction for a period of 30 days after the entry of a final judgment to modify or vacate the final judgment on the timely motion of a party or *sua sponte*. (*Freeman v. C.T.A.* (1965), 33 Ill. 2d 103, 210 N.E.2d 191; *Darling v. Reinert* (1971), 132 Ill. App. 2d 192, 268 N.E.2d 890.) If a post-trial motion is filed by one or both of the parties within 30 days of the judgment, the trial court retains jurisdiction over the matter until the

disposition of any pending post-trial motion. (*Welch v. Ro-Mark, Inc.* (1979), 79 Ill. App. 3d 652, 398 N.E.2d 901; *City of DeKalb v. Anderson* (1974), 22 Ill. App. 3d 40, 316 N.E.2d 653.) The trial court may act on those points specifically raised in the post-trial motion or on any error which the court perceives must be remedied in order to do justice between the parties. Here the respondent did file a timely post-trial motion which was still pending on December 13, 1979. Consequently, the trial court possessed the jurisdiction to act on its own to do justice between the parties. Moreover, upon examining the record, we think that ordering the second appraisal was necessary to do justice. In the November 28, 1979, hearing, respondent's counsel raised the issue that the appraisal value did not necessarily reflect the value of the property and, therefore, insisted on a sale of the house on the open market. He denied stipulating at trial that the first appraisal represented the fair value of the house. Indeed, his assertion that he merely stipulated what the appraisal would indicate and not its validity is born out by the record. Furthermore, during this hearing there were various references to damages caused to the house from the prior winter's severe weather. In light of the possibility that the fair market value of the house had decreased or that the original appraisal was dated, the trial court ordered the new appraisal. We find no error in this action.

■■ Nor are we persuaded by the respondent's suggestion that the second appraisal was of questionable value because it was not obtained by an independent appraiser. An independent appraisal was necessary, respondent urged, because of petitioner's clear interest in the outcome of the appraisal. We think that respondent has waived this argument. While at the December 13 hearing respondent argued that the trial court had ordered the petitioner to obtain an appraisal rather than ordering both of the parties to obtain an appraisal, an examination of the pertinent order states "that the parties should select an appraiser to appraise the property as of the date; cost to be divided." We take the respondent's inaction in neither seeking his own appraisal nor insuring the independence of petitioner's appraiser to serve to waive any allegations of error as to the appraisal. (*In re Marriage of Sanborn* (1979), 78 Ill. App. 3d 146, 396 N.E.2d 1192.) Furthermore, the record reveals that counsel for respondent made several offers to buy out the petitioner based on the value of the residence as stated in the second appraisal. This implies acceptance of the validity of the appraisal and would appear to waive any of respondent's arguments as to the second appraisal's value of the property.

■■ Respondent next urges that the trial court abused its discretion in awarding the petitioner the marital residence. Distribution of marital property is governed by section 503 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 503), which provides for

distribution to be in just proportions considering all relevant factors. (Ill. Rev. Stat. 1977, ch. 40, par. 503(c)(1-10).) The Act does not require equal distribution of the marital property as long as the record suggests consideration of the aforementioned factors. (*In re Marriage of Thornton* (Docket Nos. 78-1343, 78-1092, 78-1214, June 26, 1980), ___ Ill. App. 3d ___, ___ N.E.2d ___; *Schubert v. Schubert* (1978), 66 Ill. App. 3d·29, 383 N.E.2d 266; see *In re Marriage of Smith* (1979), 77 Ill. App. 3d 858, 396 N.E.2d 859; *In re Marriage of Stallings* (1979), 75 Ill. App. 3d 96, 393 N.E.2d 1065.) Moreover, a trial court's distribution of property will not be reversed unless there is a clear abuse of discretion. *In re Marriage of Piktel* (1980), 81 Ill. App. 3d 567, 401 N.E.2d 584; *In re Marriage of Sipich* (1980), 80 Ill. App. 3d 883, 400 N.E.2d 696; *In re Marriage of Smith*.

■■■ The respondent argues that the award of the marital residence to petitioner was improper because petitioner was not a custodial parent under section 503(c)(4) (Ill. Rev. Stat. 1977, ch. 40, par. 503(c)(4): *Lamp v. Lamp* (1979), 73 Ill. App. 3d 713, 392 N.E.2d 349) and because no preferential treatment should have been provided petitioner on the basis of her sex (*Orr v. Orr* (1979), 440 U.S. 268, 59 L. Ed. 2d 306, 99 S. Ct. 1102). We agree that the sex of a spouse should not be considered a factor in determining property disposition. However, we believe that the evidence amply supports the trial court's award of the marital residence to the petitioner. We emphasize that the amended judgment entered December 13, 1979, did not award the marital residence to the petitioner outright, but rather only upon payment to respondent of his 50% interest in the residence calculated on the basis of the second appraisal. The parties were married 36 years, during which time petitioner contributed to the parties' acquisition of marital assets through her various outside jobs and as a homemaker. She possessed no special skills, training, or education, which at age 53 made it unlikely that she would be employed in the future. (*In re Marriage of Smith*.) Consequently, her opportunity for acquiring assets in the future is limited, at best. This is in contrast to respondent's 17-year job as an engineer with the city. Although respondent was 60 years of age at the time of the hearing, he is apparently in good health and will receive a pension. While respondent denied that petitioner was unable to work due to ill health, this merely raised an issue of fact for the trier of fact to resolve by evaluating the credibility of the witness. (*In re Marriage of Stallings*.) The evidence also reveals that petitioner was very close to her daughters who live very near to the marital residence, that she did not drive, and that she was afraid to live elsewhere. Upon our review of the facts we do not think that the trial court erred in allowing petitioner to buy out respondent. We should note that respondent has directed our attention to no case which holds that it is improper to allow

one party to buy out the other party's equal interest in the marital residence.

The respondent next argues that the trial court erred in awarding maintenance to petitioner. Initially, respondent asserts that the trial court should have granted a fixed term maintenance award to petitioner to enable her to obtain the job training necessary for her to secure gainful employment rather than grant an award of an indeterminate length. (*In re Marriage of Marsh* (1978), 64 Ill. App. 3d 572, 381 N.E.2d 804.) This assertion is made on the basis that the petitioner is physically able to work and at age 53 could be gainfully employed for approximately 12 more years. A fixed versus indeterminate term of maintenance was also appropriate, respondent asserts, because of the limited resources available in this instance.

■■ Generally, maintenance is awarded based upon the needs of the one spouse in relation to the other spouse's ability to pay and is determined from the standpoint of the manner in which the parties have been accustomed to live. (*In re Marriage of Thornton* (Docket Nos. 78-1343, 78-1092, 78-1214, June 26, 1980), ___ Ill. App. 3d ___, ___ N.E.2d ___; *In re Marriage of Smith* (1979), 77 Ill. App. 3d 858, 396 N.E.2d 859; 16A Ill. L. & Prac. *Divorce* §158 (1971).) The employment or employment potential of a spouse seeking maintenance is only one factor in determining whether maintenance should be awarded. (Ill. Rev. Stat. 1977, ch. 40, par. 504(b)(1-6).) Consequently, a maintenance award may be proper where (1) the spouse is employed but with little prospect of earning a salary commensurate with the spouse's needs (*In re Marriage of Stegbauer* (1980), 84 Ill. App. 3d 83, 404 N.E.2d 1140; *In re Marriage of Wiedner* (1979), 75 Ill. App. 3d 1014, 394 N.E.2d 620); (2) the spouse is awarded a considerable amount of property as a property award but the property fails to provide a sufficient income (*In re Marriage of Thornton*); and (3) the spouse is unemployed but would have little opportunity to earn an adequate salary if employed due to age, health, job skills, or education. *In re Marriage of Gan* (1980), 83 Ill. App. 3d 265, 404 N.E.2d 306.

Here, contrary to respondent's assertion, the trial court considered the parties' employment, educational background, age, health, and standard of living as required by statute in determining the propriety of awarding maintenance. (Ill. Rev. Stat. 1977, ch. 40, par. 504(b)(1-6).) Moreover, the award of maintenance to petitioner is not inconsistent with the evidence concerning petitioner's health or employment picture.

However, in so concluding, we are not satisfied that the amount of the award was proper. The judgment provided for maintenance in the amount of "thirty-five percent (35%) of the respondent's total net income from his employment, and thirty-five percent (35%) of any other income from other sources." The gravamen of respondent's argument attacking the

award is that it was improper for the trial court to make a percentage maintenance award. At oral arguments, counsel for respondent conceded that a percentage maintenance award might be appropriate for temporary maintenance awards because of the obvious time limitations which exist when temporary maintenance is sought. Counsel argued, however, that a percentage award for permanent maintenance would act to penalize respondent if he pursues any new business ventures because any profits he might earn would not be fully realized. In response, petitioner's counsel argued that, because respondent's employment and income history have been constant, as opposed to someone whose income varies markedly each year, a percentage award would merely serve to avoid the cost of the otherwise numerous post-decree modifications necessary to maintain petitioner's present standard of living in light of the present high rate of inflation.

While counsel for both parties noted at oral argument that their research failed to disclose any Illinois decisions which have considered the propriety of percentage maintenance awards, our research discloses that this type of award has been sanctioned both under the new Illinois Marriage and Dissolution of Marriage Act (*In re Marriage of Stegbauer* (1980), 84 Ill. App. 3d 83, 404 N.E.2d 1140), and under the old divorce act (*Condy v. Condy* (1946), 328 Ill. App. 8, 65 N.E.2d 219). Furthermore, this practice has been recognized by the legal commentators. (See generally 24 Am. Jur. 2d *Divorce and Separation* §627, at 748 1966).) Accordingly, we do not accept respondent's argument that a percentage award is per se improper and an abuse of the trial court's discretion. *In re Marriage of Bently* (1980), 82 Ill. App. 3d 25, 401 N.E.2d 1085; *In re Marriage of Reyna* (1979), 78 Ill. App. 3d 1010, 398 N.E.2d 641.

We do believe, however, that the instant award must be modified. The award as it is presently worded grants petitioner 35 percent of respondent's total net income from his employment and 35 percent of respondent's income from any source. As such the award would seem to encompass any income derived from any source whatsoever. The trial court, however, made no effort to specifically define "income" as did the trial court in *In re Marriage of Stegbauer*. Rather, it defined net income only in terms of compensation from employment, net income constituting the difference between respondent's gross income and deductions for his pension, union dues, and Federal withholding tax. From this it would appear that the trial court's intent in including the "other source" language was merely to insure that petitioner would receive a percentage of respondent's income from both his city job and from any part-time jobs he might undertake after the dissolution of the marriage was granted. At the trial, respondent's 1978 income tax return revealed that respondent

had earned a considerable amount in 1978 at several part-time jobs, but he insisted that he was no longer employed at any part-time work.

■■ Counsel for petitioner concedes that neither petitioner nor the trial court intended for extraordinary income such as income from a lottery or sweepstakes ticket to be included in the 35 percent award. Under the present facts, we think that the instant maintenance award must be limited to exclude not only extraordinary income but also income for all sources other than employment. To allow petitioner to receive a percentage of respondent's income from all other sources would ignore the statutory requirement that the ability of a spouse to pay maintenance is determined on the basis of the standard of living established by the parties during the marriage. (Ill. Rev. Stat. 1977, ch. 40, par. 504(b)(3).) As Justice Trapp noted in his dissenting opinion in *In re Marriage of Stegbauer* (1980), 84 Ill. App. 3d 83, 87:

> "By its terms, the amount of maintenance is permanently measured by a percentage of income received by the husband. Thereafter, if he acquires nonmarital property any capital gains automatically increases the maintenance without regard to the financial resources or the needs of the wife. The same is true as to the income developed after the dissolution and without regard to the standard of living established during the marriage."

Accordingly, we modify the present maintenance award to provide for maintenance in the amount of 35% of the respondent's total net income from employment of any kind. This award of maintenance does not, contrary to respondent's assertions, act to deny him his means of support. The trial court found that respondent's monthly net income totalled $1,678. His expenses amounted to $1,087 a month based on his retention of the marital house and its expenses, while petitioner's expenses totalled $820 a month also based on the retention of the marital residence. The 35% award would grant petitioner approximately $580 a month toward her expenses, leaving respondent with an amount greater than that claimed necessary for his monthly expenses.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part and modified in part. The cause is also remanded to the trial court to take action consistent with this opinion.

Affirmed in part; modified in part.

GOLDBERG, P. J., and O'CONNOR, J., concur.