FIRST DIVISION
May 30, 2006

No. 1-04-3808

| | | |
|---|---|---|
| *In re* MARRIAGE OF LINDA EHGARTNER-SHACHTER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Cook County. |
| | ) | |
| and | ) | No. 90 D 18276 |
| | ) | |
| JAY FARLEY SHACHTER, | ) | Honorable |
| | ) | Melvin J. Cole, Raymond A. |
| Respondent-Appellant. | ) | Figueroa, and Barbara Ann Riley, |

)

Judges Presiding.

JUSTICE GORDON delivered the opinion of the court:

Respondent Jay Farley Shachter (hereinafter, Jay) appeals multiple orders, detailed below, entered by the circuit court in connection with postdecree divorce proceedings. For the reasons that follow, we affirm one of these orders and dismiss the appeal from the remainder of the orders for lack of jurisdiction.

On September 18, 2002, the circuit court transferred the custody of the parties' minor daughter Hilda, who was to attain the age of majority in 22 days, to Jay. The

circuit court reserved the ruling on Jay's petition to modify child support, which had been filed on August 29, 2002. Also needing resolution were various financial issues, as follows. On September 18, 2002, petitioner Linda Ehgartner-Shachter (hereinafter, Linda) filed a petition for a rule to show cause, alleging that Jay had failed to pay expenses incurred in the past for Hilda's medical and dental care, as well as medical expenses for the parties' other daughter Margaret, who had already reached majority. Linda additionally requested that Jay pay the attorney fees she incurred in bringing her petition for a rule to show cause, as well as her attorney fees in connection with the petitions she had previously filed, which were still pending, for medical expenses. Also pending at the time were: Linda's petition, filed on April 22, 2002, asking that Jay pay for Hilda's and Margaret's college expenses; Linda's amended petition, filed on September 5, 2002, to increase child support retroactive to July 1, 1998[1]; and Linda's petition, filed on May 23, 2002, for contribution to her attorney fees "to level the playing field."

On February 3, 2003, Jay brought a petition for contribution to the cost of the custody reevaluation, which had taken place in 2001. On February 5, 2003, the children's former attorney Howard Rubin, who was discharged on December 5, 2002, brought a final petition for all attorney fees due to him.

On March 13, 2003, attorney Alan Lyons entered his appearance on behalf of

---

[1]Linda's original petition to increase child support and reallocate medical and educational expenses was filed in June of 1998.

No. 1-04-3808

Jay.[2]  On March 24, 2003, after a number of continuances, a hearing on "all financial

issues" was set for April 14, 2003.  On April 7, 2003, attorney Lyons filed a motion to

withdraw.  On April 10, 2003, Jay was present in court and was notified of Lyons'

intention to withdraw, to which he objected.  Over Jay's objection, Judge Raymond A.

Figueroa granted Lyons' motion to withdraw *instanter*.

On April 11, 2003, Jay, *pro se*, filed an "Answer and Affirmative Response to

Motion to Withdraw."  In that response, Jay admitted that he had received a copy of the

motion to withdraw on April 9, 2003, but asserted that the applicable notice and service

requirements were violated and therefore the motion to withdraw was not properly

before the court.

The next order in the record is dated April 21, 2003.  On that date, Judge

Figueroa, during a status call on Rubin's petition for attorney fees, entered an order

granting Rubin attorney fees in the requested amount of $15,783, and continuing the

matter to May 19, 2003, for status on the apportionment of that sum between the

parties.  Judge Figueroa noted that both parties failed to appear in court and failed to

respond to Rubin's petition as they were ordered by the court.  The trial on other

pending matters was apparently continued.

On April 25, 2003, Jay, *pro se*, filed a motion for summary judgment on the issue

[2]Jay's previous attorney was given leave to withdraw on January 8, 2003.

3

of Linda's contribution to the cost of the custody evaluation. On April 28, 2003, Linda filed a motion to strike and dismiss Jay's motion for contribution.

On May 19, 2003, attorney Richard A. Wilson of the firm Nottage & Ward filed a motion for leave to enter an appearance on behalf of Jay and to continue the hearing on the allocation of Rubin's attorney fees to May 29, 2003. Judge Figueroa granted the request for a continuance and took the motion to enter an appearance under advisement.

On May 29, 2003, Judge Figueroa granted Wilson's motion to enter his appearance *instanter*; ordered an escrow in the amount of $2,000 previously established by the court to be turned over to Rubin as partial payment of his attorney fees; and ordered the balance of Rubin's attorney fees to be allocated among the parties in the course of the trial on postdissolution matters. In addition, Judge Figueroa ordered Jay to pay Linda $1,200 for Hilda's college tuition and fees, and $250 to reimburse Linda for a lost work day due to Jay asking for a continuance. The trial was continued to June 9 and 10, 2003.

On June 10, 2003, the parties reached an agreement on all pending financial issues, and Judge Figueroa entered an order memorializing the agreement. That order also contained a recitation of several previously entered orders, as well. On June 16, 2003, Judge Figueroa entered a "Conformed Order," prepared by Jay's counsel, which contained minor modifications to the June 10, 2003, order. The June 16, 2003, order stated in pertinent part:

"1. By agreement, both parties withdraw all pending petitions and

4

motions;

2. In consideration of paragraph 1, by agreement, [Jay] shall pay [Linda] the sum of $35,000 ***;

3. By agreement, [Jay] and [Linda] shall each be responsible for 50% of tuition, fees, books and supplies for college for their daughter Hilda, until Hilda completes her[] undergraduate degree or reaches age 23. ***

4. Pursuant to previous orders, [Jay] shall pay for the orthodontia services [for] Hilda through their completion;

5. Pursuant to previous order, [Jay] shall pay to [Linda] $250 for missed work; said payment to be made pursuant to that Order;

6. This matter is off the call.

7. By agreement, by September 1, 2003, [Linda] shall give [Jay] accounting of tuition, fees, books & supplies paid for [Hilda] for 2003, 1st semester, and receive credit therefor. [Jay] shall receive credit for $1200 already paid, and after all credits and offsets, parties shall pay 50% each of all enumerated college expenses in paragraph 3."  (Emphasis in original.)

On September 4, 2003, having noted Jay's "continuing objection to the award of fees [to Rubin] and any allocation thereof," Judge Figueroa allocated the responsibility for Rubin's attorney fees as follows: 60% to Jay and 40% to Linda.  Judge Figueroa further gave Jay credit for $2,000 already paid from the escrow and correspondingly

entered a judgment against Jay in the amount of $7,469.80 and against Linda in the amount of $6,333.20. Lastly, Judge Figueroa ordered that "this matter is off call."

On October 6, 2003, within the 30-day statutory period during which the circuit court still had jurisdiction over the matter,[3] Jay's attorney Wilson filed a "Praecipe for Fee Hearing." On December 5, 2003, Wilson filed a petition for final attorney fees and costs Jay owed to his firm. On that date, Wilson and Nottage & Ward also moved to withdraw as Jay's attorney. In the motion to withdraw, Wilson stated that on September 4, 2003, a final order was entered in this case resolving all pending matters.

On December 15, 2003, Judge Figueroa ordered that the matter be returned to Judge Young "for further proceedings, the transferred matter being concluded."

On March 11, 2004, Nottage & Ward's motion to withdraw and petition for final fees and costs were to be presented before the circuit court. On March 11, 2004, the circuit court, noting that Jay did not appear in court, ordered the matter continued to March 24, 2004, and further ordered Nottage & Ward to serve Jay with a copy of that continuance order by regular and certified mail. On March 12, 2004, Nottage & Ward filed its proof of service on Jay with the court.

On March 24, 2004, the matter was transferred to Judge Barbara Ann Riley. On April 15, 2004, Judge Riley, noting that Jay appeared *pro se* and "object[ed] to notice,"

---

[3]October 4, 2003, fell on a Saturday.

ordered that Jay's "objection to a hearing today made in open court to notice of the motion to withdraw, claimed under Supreme Court Rule 13(c), [be] granted." Judge Riley further set Nottage & Ward's motion to withdraw for a hearing on May 24, 2004, and gave Jay 28 days to respond.

On May 13, 2004, Jay filed his response to the motion to withdraw, objecting to notice and claiming that the matter therefore was not properly before the court. On May 24, 2004, the circuit court, noting that Jay appeared in court, granted Nottage & Ward leave to withdraw *instanter*. On May 26, 2004, Nottage & Ward moved for a hearing on its petition for final fees and costs.

On June 10, 2004, Judge Riley, noting that Jay failed to appear, set a hearing date on Nottage & Ward's petition for fees and costs for August 2, 2004, and gave Jay 28 days to respond to the petition. Judge Riley further ordered that Nottage & Ward send Jay a copy of that order by regular and certified mail.

On July 29, 2004, Nottage & Ward petitioned for a default judgment against Jay. On July 30, 2004, Jay filed an "Emergency Motion to Vacate" directed at the orders of May 24, 2004, and June 10, 2004, on the grounds that the notice given to him was defective.

On August 2, 2004, Jay submitted a motion for substitution of judge as a matter of right, pursuant to section 2-1001(a)(2) of the Code of Civil Procedure (the Code) (735 ILCS 5/2-1001(a)(2) (West 2002)). On the same date, Judge Riley, noting that "[n]o response or appearance has been filed on behalf of [Jay], *** and [Jay] appeared in his own person and objected to notice," granted Nottage & Ward's petition for a default

7

judgment. The court immediately conducted a prove-up, found the fees reasonable, and entered a judgment in favor of Nottage & Ward in the amount of $9,543.20. On August 9, 2004, Judge Riley denied Jay's motion for substitution of judge.

On September 24, 2004, Jay filed a motion to allocate child support. No new matter unknown to the circuit court at the time of the entry of the June 16, 2003, order was raised in the motion. On November 12, 2004, Judge Riley entered an order denying Jay's motion to allocate child support and found that order to be "final and appealable."

On December 10, 2004, Jay filed a notice of appeal.

ANALYSIS

Jay appeals the following orders of the circuit court: (1) the November 12, 2004, order denying the motion to allocate child support; (2) the August 9, 2004, order denying the motion for substitution of judge; (3) the August 2, 2004, order granting Nottage & Ward's petition for attorney fees and costs; (4) the May 24, 2004, order granting Nottage & Ward leave to withdraw as Jay's attorney; and (5) the April 10, 2003, order granting Lyons leave to withdraw as Jay's attorney. Neither Nottage & Ward nor Lyons responds to Jay's appeal. Linda, in her brief, only addresses Jay's contention that the circuit court erred in denying his motion to allocate child support. Linda contends that we lack jurisdiction to consider Jay's appeal insofar as it pertains to the allocation of child support. Linda asserts that Jay's appeal is untimely, as it was filed more than a year after the June 10, 2003, order of the circuit court settling all financial issues between the parties. Linda argues that the June 10, 2003, order was final, as

8

No. 1-04-3808

the parties had agreed to withdraw all pending motions and petitions, and the circuit court ordered the matter "off the call." Thus, Linda posits that the allocation of child support for the brief remainder of Hilda's minority was subsumed within the June 10, 2003, order finally settling financial issues between the parties. Linda further posits that the June 10, 2003, order was immediately appealable.[4]

Regardless of the fact that Nottage & Ward and Lyons did not respond to Jay's appeal and therefore did not contest jurisdiction, this court has a *sua sponte* duty to ensure that it has jurisdiction with respect to each of the circuit court's orders being appealed. See, *e.g.*, In re Marriage of Young, 244 Ill. App. 3d 313, 315, 614 N.E.2d 423 (1993). Thus, while Linda only contests our jurisdiction over the issue of child support allocation for the brief remainder of Hilda s minority, we must also examine whether we have jurisdiction over all the other orders Jay seeks to appeal. The question that has to be explored in the instant case is whether the filing of Jay s September 24, 2004, motion to allocate child support and the final disposition of that motion on November 12, 2004, which was issued less than 30 days prior to Jay s filing a notice of appeal on

---

[4]Linda's contention would have to be taken as referring to the June 16, 2003, order, which amended the June 10, 2003, order.

December 10, 2004, were sufficient to preserve the appealability of the other, earlier orders Jay seeks to appeal. In other words, may Jay "piggyback," for the purposes of appealability, earlier orders in these postdecree proceedings, including the orders pertaining to the dispute between him and his own counsel, onto the November 12, 2004, order?

Jurisdiction of appellate courts is limited to reviewing appeals from final judgments, subject to statutory or supreme court rule exceptions. Citations. A judgment is final for appeal purposes if it determines the litigation on the merits or some definite part thereof so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment. In re Marriage of Verdung, 126 Ill. 2d 542, 553, 535 N.E.2d 818 1989.

However, Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)) provides, in pertinent part:

"If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both. Such a finding may be made at the time of the entry of the judgment or thereafter on the court's own motion or on motion of any party.

In the absence of such a finding, any judgment that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable ."

There is an apparent conflict between the First and the Second Districts as to whether a Rule 304(a) certification is required to separately appeal an order disposing

of postdecree matters, where at the time of such order's entry other postdecree matters remain pending.[5] In the First District case of In re Marriage of Carr, 323 Ill. App. 3d 481, 752 N.E.2d 1181 (2001), this court held that separate postdecree petitions to modify child support, for a rule to show cause based on failure to pay college expenses, and for contribution to attorney fees were each independently appealable, without requiring a Rule 304(a) certification. Carr, 323 Ill. App. 3d at 485. Although the court in Carr referred to these petitions as "claims," it clearly treated them as independent actions. Notwithstanding the holding in Carr, the Second District in In re Marriage of Alyassir, 335 Ill. App. 3d 998, 782 N.E.2d 978 (2003), held that postdecree claims similar to those in Carr, but brought in a single petition, were not independently appealable without a Rule 304(a) certification. In support of its holding, Alyassir referred to the supreme court's decision in Marsh v. Evangelical Covenant Church, 138 Ill. 2d 458, 563 N.E.2d 459 (1990), which, although not involving postdecree divorce proceedings, held that the pendency of a claim for attorney fees as sanctions under section 2-611 of the Civil Practice Law (Ill. Rev. Stat. 1987, ch. 110, par. 2-611), now Rule 137 (155 Ill. 2d R. 137), would preclude the earlier adjudication of the primary claim

---

[5]Although in In re Marriage of Leopando, 96 Ill. 2d 114, 120, 449 N.E.2d 137 (1983), the supreme court held that an action for dissolution of marriage is comprised of a single claim because the issues involved are so intertwined and, therefore, issues raised in dissolution proceedings are not appealable under Rule 304(a), postdecree proceedings are not subject to this jurisdictional limitation.

from becoming appealable without a Rule 304(a) certification (Marsh, 138 Ill. 2d at 465, 468 (relying upon a statutory pronouncement that proceedings for attorney fees under section 2-611 must be brought, and therefore regarded, as part of the underlying cause of action, and holding that "no appeal may be taken from an otherwise final judgment *** when a section 2-611 claim remains to be resolved, absent a finding pursuant to Rule 304(a) that there is no just reason to delay enforcement or appeal")). Alyassir, 335 Ill. App. 3d at 1000 ("even if a case presents separate 'claims,' that means *only* that an order that finally resolves fewer than all of them *can be made immediately appealable* by including a written Rule 304(a) finding. Separability of issues is a necessary condition for a Rule 304(a) appeal. It is not a *sufficient* condition. A proper Rule 304(a) finding is still required. Carr undercuts Marsh by allowing an immediate appeal even when a claim is pending and the trial court has made no Rule 304(a) finding" (emphasis in original)).

Marsh was subsequently reaffirmed by our supreme court in John G. Phillips & Associates v. Brown, 197 Ill. 2d 337, 757 N.E.2d 875 (2001), also involving a claim for attorney fees as sanctions in a non-divorce civil action. In F.H. Prince & Co. v. Towers Financial Corp., 266 Ill. App. 3d 977, 640 N.E.2d 1313 (1994), a case which, like Marsh and Phillips, did not involve postdecree proceedings, we extended the holding in Marsh to apply to any pending request for attorney fees, regardless of whether claimed as a sanction or otherwise pursuant to statute or contract. In Prince, we stated that a pending request for attorney fees is generally regarded as a claim, which, until finally ruled upon by the circuit court, precludes an appeal of otherwise final judgments in the

matter without a Rule 304(a) finding. <u>Prince</u>, 266 Ill. App. 3d at 983.

Clearly, under <u>Carr</u> each postdecree petition in this case would have become appealable when it was finally decided, and thus this appeal would have been untimely with respect to every order Jay seeks to appeal, with the exception of the November 12, 2004, order denying his September 24, 2004, motion to allocate child support. However, even under <u>Alyassir</u>, which appears to defer appealability of any single determination until all claims are adjudicated, at least when requests for relief are conjoined in a single petition, the requisite finality in this case would have been reached on August 2, 2004—when the circuit court granted Nottage & Ward's petition for attorney fees and costs, having already allowed it to withdraw as Jay's attorney—and most certainly on August 9, 2004—when the circuit court denied Jay's motion for substitution of judge—four months prior to Jay filing his notice of appeal on December 10, 2004. In point of fact, however, while the application of the holdings of <u>Marsh</u> and <u>Phillips</u> to postdecree requests for attorney fees would ordinarily extend the appealability of dispositions of postdecree claims from which the request for attorney fees would have been derived, that result would only obtain if the request for attorney fees came from the adversarial ex-spouse, not the party's own attorney, as was the case here. The impact of the pendency of a request for fees brought by the party's own counsel is controlled by subsection (c)(2) of section 508 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/508(c)(2) (West 2002)) (the Act), which specifically states that, unlike a request for fees from an adverse party, a request from one's own counsel "*constitutes a distinct cause of action. A pending but undetermined Petition for Setting Final Fees and*

13

*Costs shall not affect appealability of any judgment or other adjudication in the original proceeding.*" Thus, the pendency of Nottage & Ward's petition for fees and costs would not have extended the appealability of the remaining petitions that were already finally ruled upon. Rather, their appealability would have been attained on September 4, 2003, when the last of them was decided.

However, as previously indicated, even if the claims of Nottage & Ward would not come under the exception of subsection (c)(2) of section 508 and were therefore controlled by Marsh, Phillips, and our determination in Prince, Jay's appeal would still be untimely as to all orders he seeks to appeal, with the exception of the November 12, 2004, order denying his September 24, 2004, motion to allocate child support. At the very latest, that request for fees concluded and became immediately appealable on August 9, 2004, when the circuit court denied Jay's motion for substitution of judge, having previously allowed Nottage & Ward to withdraw as Jay's attorney and awarding it fees and costs. After that disposition, no claims remained, the pendency of which would have tolled the time to file a notice of appeal in the absence of a Rule 304(a) certification. Jay's notice of appeal, however, was filed four months later.

Jay might attempt to argue that the filing of his September 24, 2004, motion to allocate child support would have revived the appealability of the earlier orders. However, he would not prevail on this argument. It is axiomatic that "[t]he jurisdiction of trial courts to reconsider and modify their judgments is not indefinite." People v. Flowers, 208 Ill. 2d 291, 303, 802 N.E.2d 1174 (2003). Ordinarily, the authority of the circuit court to alter a judgment terminates after 30 days of its entry. In re Marriage of

14

Agustsson, 223 Ill. App. 3d 510, 515, 585 N.E.2d 207 (1992). However, as discussed, in the absence of a Rule 304(a) certification, the circuit court retains jurisdiction over a judgment beyond the 30-day period if other claims in that action remain pending. Other exceptions to the 30-day rule include instances where a new claim or a post-trial motion directed at the judgment is filed within 30 days of its entry. See Marsh, 138 Ill. 2d at 459, 468 (a petition for attorney fees as sanctions filed 29 days after the circuit court rendered a final judgment on the merits on all issues is a pending "claim" within the meaning of Rule 304(a), rendering the underlying judgment modifiable and nonappealable); Phillips, 197 Ill. 2d at 343-45; 155 Ill. 2d R. 303(a)(2); 735 ILCS 5/2-1203 (West 2002) (a proper posttrial motion directed at the judgment and filed within 30 days after its entry renders the judgment nonappealable); In re Marriage of Parello, 87 Ill. App. 3d 926, 931-32, 409 N.E.2d 461 (1980) ("If a post-trial motion is filed by one or both parties within 30 days of the judgment, the trial court retains jurisdiction over the matter until the disposition of any pending post-trial motion").

Here, however, it is beyond dispute that no new claims, posttrial motions, or any other petitions for relief were filed during the 30-day period after the rendition of the August 9, 2004, order of the circuit court disposing of the last of then-pending matters in this case. The September 24, 2004, motion to allocate was filed more than 30 days after the entry of the August 9, 2004, order, and, therefore, could not be regarded as a claim whose pendency would toll the time to file a notice of appeal. Similarly, the motion—which was not styled as a posttrial motion, but rather purported to be an independent petition—cannot be regarded as a proper posttrial motion because it was

15

filed more than 30 days after the entry of the August 9, 2004, order. Rather, the motion was merely duplicative of Jay's August 29, 2002, petition to modify child support, which, as discussed, he had agreed to withdraw on June 10, 2003, pursuant to the settlement agreement reached between him and Linda.[6]

The circuit court therefore properly denied Jay's September 24, 2004, motion to

---

[6]The motion cannot even be treated as a petition pursuant to section 510 of the Act (750 ILCS 5/510(a) (West 2002)) to prospectively modify child support, as June 16, 2003, order was not subject to any prospective modification, insofar as it pertained to the issue of child support, for the reason that child support stopped accruing on October 10, 2002, when Hilda reached majority.

allocate child support. The June 16, 2003, order, was *res judicata* on the issue of child support. As we discussed in Smolinski v. Vojta, 363 Ill. App. 3d 752 (2006), such a final nonmodifiable order may only be attacked collaterally, and any such collateral attack must comply with the requirements of section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2004)), including the requirement that the petition raise facts not appearing in the record which, if known to the court at the time the judgment was entered, would have prevented its entry, or facts establishing that the judgment was unfair, unjust or unconscionable. Jay's September 24, 2004, motion to allocate child support, however, failed to comply with these requirements, as it did not raise any new matter unknown to the circuit court at the time of the entry of the final judgment and did not purport to attack the June 16, 2003, order as unfair, unjust or unconscionable.

Jay, however, would assert that the circuit court's June 16, 2003, order did not completely dispose of the issue of child support and, therefore, that issue remained pending. We disagree. The June 16, 2003, order is complete on its face, not leaving open any child support issues. Further, given that the parties had agreed to withdraw *all* pending petitions, which must be deemed to include then-pending cross-petitions to modify child support, given that the amount in question is *de minimus*—by Jay's own admission "a couple of hundred dollars"[7]—when compared to the sum of $35,000 Jay had agreed to pay Linda as part of their settlement, given also the fact that the

---

[7]The record supports this figure, as Linda's net salary as a public school teacher was less than $30,000 a year.

17

agreement was approved by the court, which then ordered the matter "off the call"—indicating that the order was final and resolved all pending financial issues—we must presume that the figure of $35,000 includes an offset for any retroactively allocated child support Linda may have owed Jay.[8]  See Corral v. Mervis Industries, Inc., 217 Ill. 2d 144, 157, 839 N.E.2d 524 (2005), quoting Foutch v. O'Bryant, 99 Ill. 2d 389, 392, 459 N.E.2d 958 (1984) ("Without an adequate record preserving the claimed error, the reviewing court must presume the circuit court had a sufficient factual basis for its holding and that its order conforms with the law. [Citations.] 'Any doubts which may arise from the incompleteness of the record will be resolved against the appellant' "); accord Webster v. Hartman, 195 Ill. 2d 426, 433-34, 749 N.E.2d 958 (2001).

Lastly, we reach Jay's contention that the orders at issue are void and must be vacated.  Specifically, Jay contends that the circuit court erred in allowing Lyons to withdraw as his attorney on April 10, 2003, and erred in allowing Nottage & Ward to withdraw as his attorney on May 24, 2004.  Jay urges that all subsequent orders on the merits became void as a result.  However, as discussed, Jay's appeal is untimely with respect to these two orders.  As a result, we do not have the authority to vacate these orders even if they were void.  Our powers to grant relief attach only upon compliance

---

[8]Jay does not direct us to any evidence in the record that would support a contrary conclusion.

with the rules governing appeals.  <u>Flowers</u>, 208 Ill. 2d at 308-09.  As our supreme court explained, although generally a void order may be attacked, either directly or collaterally, at any time or in any court,

> "the issue of voidness must be raised in the context of a proceeding that is properly pending in the courts.  If a court lacks jurisdiction, it cannot confer any relief, even from prior judgments that are void.  The reason is obvious.  Absent jurisdiction, an order directed at the void judgment would itself be void and of no effect.

> Consistent with these principles, the appellate court is not vested with authority to consider the merits of a case merely because the dispute involves an order or judgment that is, or is alleged to be, void."  <u>Flowers</u>, 208 Ill. 2d at 308.

Moreover, Jay's argument would fail on the merits.  Supreme Court Rule 13 requires a withdrawing attorney to give his client "reasonable notice of the time and place of the presentation of the motion for leave to withdraw."  134 Ill. 2d R. 13(c)(2).  Rule 13 further requires that a withdrawing attorney advise his client that "he should retain other counsel *** or file with the clerk of the court, within 21 days after the entry of the order of withdrawal, his supplementary appearance stating therein an address at which service *** may be had upon him."  134 Ill. 2d R. 13(c)(2).  Where, as here, a party received notice and was present at the hearing on the motion to withdraw, this rule has been interpreted to require a continuance of at least 21 days after the entry of the order granting withdrawal, so that the party can retain other counsel or enter his

19

own supplementary appearance. See In re Marriage of Miller, 273 Ill. App. 3d 64, 69, 652 N.E.2d 396 (1995); In re Marriage of Santa Cruz, 179 Ill. App. 3d 611, 621-22, 534 N.E.2d 636 (1989). During this 21-day transition period, the circuit court should not render any rulings prejudicing the party's rights. Miller, 273 Ill. App. 3d at 69. Although the failure to grant a 21-day continuance may constitute reversible error (Santa Cruz, 179 Ill. App. 3d at 622), it was held in First National Leasing Corp. v. E.T.P. of Chicago, Inc., 158 Ill. App. 3d 882, 886, 511 N.E.2d 889 (1987), that the failure to grant a continuance is not a ground to vacate a judgment.

In any event, Jay did get a 21-day continuance afer Nottage & Ward was granted leave to withdraw. Although we note that within 21 days of granting Lyons leave to withdraw, the circuit court entered an order granting the children's attorney's petition for fees in the requested amount of $15,783, Jay does not claim on appeal that he was prejudiced by that order; nor, after retaining Nottage & Ward, did Jay move for reconsideration of that order or otherwise contest it. Accordingly, no grounds for vacating the circuit court's orders can be said to be present here.

For the reasons set forth above, we affirm the November 12, 2004, order of the circuit court denying Jay's petition to allocate child support. We dismiss the remainder of the appeal for lack of jurisdiction.

Affirmed in part and dismissed in part.

BURKE and McBRIDE, JJ., concur.

No. 1-04-3808