*In re* MARRIAGE OF MARY JO GARELICK, Petitioner-Appellee, and KENNETH N. GARELICK, Respondent-Appellant.

First District (4th Division)   Nos. 86—2304, 86—3386 cons.

Opinion filed March 24, 1988.

Edward R. Jordan and Jerrald B. Abrams, of Wheeling, for Kenneth N. Garelick.

Robert S. Pinzur, Ltd., of Buffalo Grove (Robert S. Pinzur, of counsel), for Mary Jo Garelick.

JUSTICE LINN delivered the opinion of the court:

Respondent, Kenneth Garelick, brought a post-dissolution petition for modification in the circuit court of Cook County against petitioner, Mary Jo Garelick. Kenneth petitioned the trial court to terminate unallocated maintenance to Mary Jo and to replace the maintenance with child support. Following a bench trial, the court entered an order reducing, but not terminating, Mary Jo's unallocated maintenance. In a separate order, the trial court denied Mary Jo's petition for attorney fees and costs.

Kenneth appeals, contending (1) the trial court's finding that Mary Jo still requires maintenance was against the manifest weight of the evidence, and (2) the trial court improperly speculated on his future income. Mary Jo also appeals, contending the trial court erred in denying her petition for attorney fees and costs.

We affirm the orders of the trial court in all respects.

BACKGROUND

On April 26, 1984, the trial court entered a dissolution of marriage judgment ending the marriage of Kenneth and Mary Jo. A settlement agreement incorporated into the judgment resolved issues including property distribution and maintenance. The agreement provided that Kenneth pay Mary Jo $1,500 per month for unallocated maintenance, which included maintenance for Mary Jo and child support for their minor children. The settlement agreement also provided for the review of the amount of the payments after five years or if there was a material change in the financial circumstances of either party.

The record shows that at the time of the dissolution in 1984, Kenneth was employed by Wickes Companies as a regional vice-president, earning a gross annual salary of $61,000. During 1984, Kenneth also inherited an interest in oil leases that added $3,609 to his annual income. In April 1985, however, due to a major corporate reorganization, Wickes Companies terminated the employment of Kenneth and several other executives. At the time of his discharge, Kenneth entered into a severance agreement with Wickes that provided that he would continue to receive his salary through August 1985.

Kenneth's search for new employment resulted in a position with Homeclub Warehouse in Fullerton, California. He was employed as a warehouse manager, earning a gross annual salary of $50,000. Kenneth also continued to receive the income from his interest in the oil leases.

The record also shows that at the time of the dissolution, Mary Jo

was employed part-time as a secretary, earning an annual salary of $12,949. Shortly after the trial court entered the judgment of dissolution, Mary Jo began working full-time, increasing her salary to $23,280. The trial court awarded her the marital residence, pursuant to the settlement agreement. Mary Jo sold the house in March 1986, receiving the net amount of $92,702. She put this amount towards the purchase of a new home.

Kenneth began his new job in September 1985. He concluded that he could not meet his living expenses if he continued to pay $1,500 per month in unallocated maintenance. He petitioned the trial court that month for modification and, in October, filed an emergency motion for temporary abatement. Following the trial court's postponement of his motion for abatement, Kenneth unilaterally reduced his unallocated maintenance payments to $896 per month.

The issues that Kenneth raised in his petition for modification were tried before the bench on March 29 and 30, 1986. The trial court entered judgment on June 5, 1986. The court based its judgment on the following findings of fact relevant to this appeal:

"1. That there is no finding of contempt against either of the parties.

2. That there has been a substantial change in the financial circumstances of the parties as of February 1, 1986.

3. That MARY JO GARELICK has been partially rehabilitated, but still requires maintenance for herself and for the parties' minor children.

* * *

5. That because of the substantial change in circumstances, the maintenance should be reduced from $1,500.00 per month to $1,220.00 per month, as of February 1, 1986.

6. That the incomes of the parties as of February 1, 1986, are as follows: MARY JO GARELICK, $23,598.00, gross; and KENNETH GARELICK, $53,200.00, gross, per year.

7. That KENNETH GARELICK may receive a bonus from his employer at the end of 1986; and may receive income from his partnership with his present wife; and his present wife may return to work.

8. That as of May 30, 1986, there is an arrearage due MARY JO GARELICK in the amount of $4,316.00."

Based on these findings, the trial court did not terminate Mary Jo's unallocated maintenance, but, rather, reduced it from $1,500 to $1,220 per month. The trial court additionally ordered Kenneth to pay the arrearage out of his portion of a title indemnity fund. Kenneth

subsequently asked the trial court to reconsider its findings regarding Mary Jo's rehabilitation and his future income. Kenneth timely appeals from the trial court's denial of his motion for reconsideration. The trial court additionally denied Mary Jo's petition for attorney fees and costs. Mary Jo timely appeals from the trial court's denial of her motion for reconsideration.

OPINION

I

A

■ Kenneth first contends that the trial court's finding that Mary Jo was only partially rehabilitated was against the manifest weight of the evidence. Section 504 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1985, ch. 40, par. 504) governs maintenance awards. Under this section, a court may grant a maintenance award only if it finds that the spouse seeking maintenance lacks sufficient property, including marital property, to provide for reasonable needs, and (1) is unable to support herself through appropriate employment, or (2) is the custodian of a child requiring in-house care, or (3) is otherwise without sufficient income. Ill. Rev. Stat. 1985, ch. 40, par. 504(a).

The Act requires the trial court to consider all relevant factors in determining the amount and duration of a maintenance award. These factors include: (1) the financial resources of the receiving spouse, including marital assets and child support payments, and her ability to become self-sufficient; (2) the time necessary to acquire sufficient education or training for appropriate employment; (3) the standard of living acquired during the marriage; (4) the duration of the marriage; (5) the age and health of the parties; and (6) the ability of a spouse to pay maintenance and meet his needs. Ill. Rev. Stat. 1985, ch. 40, par. 504(b).

The consideration of the time necessary for the receiving spouse to acquire education or training for appropriate employment incorporates into Illinois law the doctrine of rehabilitative maintenance. (Ill. Ann. Stat., ch. 40, par. 504(b)(2), Historical and Practice Notes, at 529 (Smith-Hurd 1980).) The doctrine requires a court to consider the extent to which the receiving spouse has either the present ability to become self-sufficient, or the future ability to acquire skills that would allow entry into the job market. (*In re Marriage of Mittra* (1983), 114 Ill. App. 3d 627, 633, 450 N.E.2d 1229, 1233-34.) The doctrine places

an affirmative obligation on the receiving spouse to seek, where plausible, employment and ultimately to acquire financial independence. 114 Ill. App. 3d at 634-35, 450 N.E.2d at 1234, quoting Ill. Ann. Stat., ch. 40, par. 504(b)(2), Historical and Practical Notes, at 529 (Smith-Hurd 1980).

■ During oral argument, Kenneth initially rejected, *in toto*, the concept of "partial rehabilitative maintenance." He argued that a receiving spouse is either completely rehabilitated, or else she is not. This "all or nothing" assertion is error. Maintenance, rehabilitative or not, is nonetheless maintenance. Section 510 of the Act expressly allows a court to modify a maintenance award, "only upon a showing of a substantial change in circumstances." (Ill. Rev. Stat. 1985, ch. 40, par. 510(a).) More specifically, a maintenance award "can be modified either when the needs of the spouse receiving alimony change or the ability of the other spouse to pay alimony changes." *In re Marriage of Lasota* (1984), 125 Ill. App. 3d 37, 42, 465 N.E.2d 649, 653, quoting *Shive v. Shive* (1978), 57 Ill. App. 3d 754, 760, 373 N.E.2d 557, 562.

Kenneth alternately contends that he and Mary Jo underwent a substantial change in circumstances and, further, that Mary Jo has become completely rehabilitated. He points to the evidence that, at the time of the initial maintenance award, his annual salary was $61,000. By the time of his petition for modification, however, his annual salary decreased to $50,000. Conversely, Mary Jo earned an annual salary of $12,949 at the time of the initial maintenance award. By the time of the petition for modification, however, her annual salary had increased to $23,580.

The burden of showing the alleged substantial change in circumstances is on the party seeking relief. In determining whether and to what degree a maintenance award should be modified, the trial court should consider the same factors that the statute includes in making the initial award. (*In re Marriage of Lasota* (1984), 125 Ill. App. 3d 37, 41, 465 N.E.2d 649, 652, citing *In re Marriage of Chalkley* (1981), 99 Ill. App. 3d 478, 482, 426 N.E.2d 237, 240.) Further, a reviewing court will not set aside a modification of a maintenance award unless the trial court clearly abused its discretion. 99 Ill. App. 3d at 482, 426 N.E.2d at 241.

Applying these principles to the instant case, we uphold the determination of the trial court that Mary Jo has become only partially rehabilitated. The trial court reviewed all of the evidence before concluding that Mary Jo still required maintenance for her needs and the needs of her children. Questions of this type are sometimes close. Af-

ter carefully reviewing the record, we cannot say that the trial court clearly abused its discretion.

## B

■ Kenneth next contends that the trial court improperly speculated on his future income. He contends specifically that the trial court abused its discretion in finding that: (1) he may receive a bonus from his employer in 1986; (2) he may receive income from his partnership with his current wife; and (3) his current wife may return to work. After reviewing the record, we cannot say that the trial court clearly abused its discretion.

Kenneth first argues that the record contains no evidence on whether or to what degree he would receive a bonus. He argues that the trial court based its finding on impermissible speculation. Although a trial court must base its judgment on evidence admitted in a case, the court appropriately may look at the paying spouse's prospective income, as well as his current income, in setting the level of maintenance. (*In re Marriage of Smith* (1979), 77 Ill. App. 3d 858, 862, 396 N.E.2d 859, 863.) The record contains evidence that Kenneth might receive a bonus from his employer. We conclude that this evidence was sufficient to support the trial court's finding.

Kenneth secondly argues that the record contains no evidence that he may receive income from his partnership with his current wife. We disagree. The record shows the existence of this partnership, which realized a capital gain in 1985. Kenneth and his current wife used these proceeds as the down payment on their current residence in California. The record contains sufficient evidence to support the trial court's finding.

Kenneth argues thirdly that the trial court abused its discretion in finding that his current wife may return to work. The record shows that Kenneth's current wife was, at one time, receiving disability income. The trial court reasoned that she "may return to work and may free up more money for the support of his wife [Mary Jo] and children."

The financial status of a divorced party's current spouse has no bearing in a proceeding for modification of maintenance or child support. However, the record clearly shows that the trial court considered the financial circumstances and needs of both Kenneth and Mary Jo in light of all the facts surrounding both households. We cannot say that this was a clear abuse of discretion. Rather, it was an assessment of those matters that demonstrates clearly the effort to reach an equitable conclusion. (*Edwards v. Edwards* (1970), 125 Ill. App. 2d 91, 96,

259 N.E.2d 820, 823, relied on in *People ex rel. Holland v. DeMichael* (1979), 79 Ill. App. 974, 978-79, 398 N.E.2d 1138, 1141.) We uphold the trial court's modification of unallocated maintenance to Mary Jo from $1,500 per month to $1,220 per month.

## II

■ Mary Jo contends that the trial court erred in denying her petition for attorney fees and costs. Section 508 of the Act governs the issue. Section 508(a) of the Act provides that a trial court may order a spouse to pay the reasonable attorney fees and costs of the other spouse in the enforcement or modification of any order other than an order for the enforcement of child support. Ill. Rev. Stat. 1985, ch. 40, par. 508(a).

Section 508(b) of the Act, however, applies exclusively to the enforcement of child support orders. In such a proceeding, if the court grants relief to the custodial party, and if the court finds that the failure to pay the child support was without cause or justification, then the court must award attorney fees and costs. Ill. Rev. Stat. 1985, ch. 40, par. 508(b).

Under section 508(b) of the Act, a trial court has no discretion as to whether to award attorney fees and costs. Its only discretion is to decide whether the failure to pay was without cause or justification. If the trial court so finds, the award of reasonable attorney fees and costs is mandatory. However, if the trial court finds that the failure to pay was justified, or that the failure was not willful and wanton, it may deny attorney fees and costs. *Elliott v. Elliott* (1985), 137 Ill. App. 3d 277, 280, 484 N.E.2d 482, 485.

■ We conclude that attorney fees and costs are unavailable to Mary Jo under section 508(b) of the Act. Although Kenneth unilaterally reduced his unallocated maintenance payments, the trial court expressly refused to find him in contempt. The court did not make the necessary finding of lack of cause or justification. After reviewing the record, we cannot say that the trial court clearly abused its discretion.

Attorney fees and costs are unavailable to Mary Jo also under section 508(a) of the Act. Attorney fees in a dissolution of marriage proceeding are the primary obligation of the party for whom the services are rendered. The allowance of attorney fees to the opposing party is justified, however, where the party seeking relief shows financial inability to pay and the ability of the other spouse to do so. Financial inability exists where to enforce payment of available funds would strip the person of the means of her support and undermine her economic stability. The allowance of attorney fees rests in the

sound discretion of the trial court, and the exercise of that discretion will not be disturbed unless clearly abused. *In re Marriage of Sanborn* (1979), 78 Ill. App. 3d 146, 152, 396 N.E.2d 1192, 1197.

After carefully reviewing the record, we cannot say that the trial court clearly abused its discretion. We uphold the trial court's denial of attorney fees and costs to Mary Jo.

For the foregoing reasons, the orders of the circuit court of Cook County are affirmed.

Affirmed.

JIGANTI, P.J., and JOHNSON, J., concur.