*In re* MARRIAGE OF MARTIN EISENSTEIN, Petitioner-Appellant, and BEVERLY EISENSTEIN, Respondent-Appellee.

First District (3rd Division)   No. 87—516

Opinion filed June 29, 1988.

Kalcheim, Schatz & Berger, of Chicago, for appellant.

Albert Brooks Friedman, Ltd., of Chicago, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:
Petitioner Martin Eisenstein filed a post-divorce judgment petition seeking to reduce his obligation to pay unallocated maintenance

and child support to his former wife, respondent Beverly Eisenstein. The trial court denied the petition, finding no substantial and material change in circumstances had occurred since the dissolution of the marriage which warranted a reduction of support payments. On appeal, petitioner claims the trial court abused its discretion and ruled against the manifest weight of the evidence. Petitioner further appeals from the court's finding of contempt against him for failure to make payments in compliance with the court judgment.

The marriage of petitioner and respondent was dissolved on June 7, 1982. At that time, the parties had two adult children and one minor child. The judgment incorporated a written separation agreement, by which the parties agreed that petitioner would pay respondent unallocated maintenance and child support in the amount of $2,600 per month for 35 months after the inception of the agreement, May 1982, subject to reduction upon the sale of the former marital home. They also agreed petitioner would pay support in the amount of $2,166 per month commencing May 1, 1985, for 47 months and $1,733 per month commencing on May 1, 1989, for 11 months.

Pursuant to the separation agreement, the parties agreed that respondent would receive total ownership of the marital residence, while each party retained sole interest in property under his or her control, including all businesses, partnerships, corporations and other business ventures. Thereby, petitioner received the interest in his business ventures and real estate along with the accompanying liabilities. Petitioner released respondent of any responsibility for $625,000 in liabilities incurred by several of his business concerns.

Petitioner complied in full with his obligation pursuant to the agreement until May 1, 1985, at which time he reduced the amount of his payments from $2,166 per month to $1,000 per month. At the same time, he filed a petition for modification of judgment claiming a substantial and material change in circumstances since the time of the judgment; he prayed that the court reduce or terminate his obligation to pay maintenance and support. Respondent filed a petition for a rule to show cause and for other relief alleging that petitioner was in arrears in his obligation to pay support. In September and October 1986, the trial court heard the following evidence.

Petitioner's primary business venture was Standard Industrial and Automotive Equipment, an automotive and shop equipment concern owned by petitioner with a partner. In 1981, petitioner drew a salary of $52,000 plus a bonus of approximately $15,000 from Standard. In 1982, petitioner earned $40,330 and no bonus from Standard.

In 1985, petitioner received a salary of $14,700 from this concern. At the time of the hearing, petitioner testified that business was slow but he was receiving approximately $1,500 per month from Standard and the salary was automatically sent to the Bank Leumi to repay a loan owed by G & M Partners, another business owned by petitioner.

At the time of the hearing, petitioner owned a 50% interest in Standard Automotive Warehouse. He and a partner are in the process of buying out a third party's interest. Petitioner testified that prior to the separation agreement, he received yearly income from Standard Warehouse in the amount of $15,000 which he immediately reinvested in the company. Neither petitioner's 1982 nor 1985 tax return reflects any income from Standard Warehouse. At the time of the hearing, petitioner testified that he was not receiving any income from Standard Warehouse.

In early 1982, petitioner owned an interest in an auto leasing company known as GJM Associates. This concern was sold prior to the dissolution.

Petitioner also owns a 50% interest in G & M Partners, Ltd., which is in the business of marketing an automotive device named "fueltron." Petitioner, his current spouse, and his partner signed a note to borrow approximately $150,000 to $200,000 to finance this concern. Petitioner's tax return reported an ordinary income loss on this venture in 1982 of $27,196. His 1985 tax return showed a G & M partnership loss of $4,631. Petitioner testified that G & M was not earning any income, and he and his partner were utilizing income from Standard Equipment to make payments to the Bank Leumi on the G & M Partners loan.

Petitioner also testified that he owned GJM Auto Sales, Inc., a used car operation. GJM lost its license when petitioner moved from Arlington Heights. He testified that up to that point in 1986 he drew a salary from GJM of $550 per week net. On his 1985 tax return, petitioner listed a net loss of $1,002 from GJM. Petitioner testified that the business would probably close within the next two or three months.

In 1983, petitioner and a partner purchased a 25% interest in Pershing Auto Leasing, Inc.; each partner's contribution was $187,500. Pershing was a business located in Florida dealing in the leasing or rental of automobiles. Petitioner moved to Florida and worked for Pershing until March 1985. Petitioner's 1984 tax return reported an actual ordinary income loss of $41,948, and his 1985 return reported an actual ordinary loss of $120,633. In 1985, petitioner's salary from Pershing was $12,692.24. Petitioner sold his interest

in Pershing in March 1985, realizing a long-term capital gain of $55,444. The sales proceeds were used to pay off the loan to the bank which financed the purchase of Pershing. Petitioner also invested in the real estate in Florida on which Pershing maintained its offices. He receives gross income of approximately $1,000 per year from this investment.

When petitioner sold his interest in Pershing, he returned to Chicago and started a new business called Gold Coast Auto Leasing. Gold Coast paid most of his $1,800-per-month rent for his residential apartment. At the time of the hearing, Gold Coast was no longer paying his rent. As of September 1986, Gold Coast had borrowed $383,769.80 from the Bank Leumi, and petitioner estimated that the value of the vehicles owned by Gold Coast was approximately $310,000. Petitioner testified that he was drawing no income from the business at the time of the hearing and was working 15 to 20 hours a week at the business.

At the time of the hearing, petitioner was employed by Apple Rent-A-Car. While petitioner did not invest any money in Apple, he personally signed notes in the amount of $230,000 payable to the Bank Leumi. Petitioner worked at Apple approximately 50 to 60 hours per week. Petitioner at first did not receive compensation from Apple, but on October 1, 1986, he began receiving a gross salary of $750 per week, $550 net. Petitioner hoped to earn enough income to buy stock in the corporation.

In 1981, petitioner and a partner owned Malmo Drive Associates, the entity which owned the building where Standard Equipment maintained its offices. In 1981 petitioner earned income of $19,000 from Malmo. His 1982 tax return reported total partnership income of $57,421. This concern was dissolved in 1984 when the real estate was sold for a total partnership profit of $150,000.

In 1982, petitioner and his new wife purchased a residence in Florida. This home was sold in September 1985 for $132,000. The proceeds of the sale were placed in an account in the Bank of Highland Park, and petitioner withdrew approximately $20,000 to $30,000 from that account for living expenses.

Several personal financial statements of petitioner were admitted into evidence. One such statement reflected a yearly income of $125,000 and assets of $1,437,500. Petitioner testified that he had exaggerated or puffed the figures on his personal financial statements to procure loans. He stated that the figures reflected on his tax returns and his financial affidavit submitted to the court were accurate.

As of the time of the hearing, petitioner owed the Bank Leumi a total of $1,108,000. Also, petitioner was separated from his current wife and their child and was paying support to them of between $175 and $200 per week. Petitioner had borrowed $40,000 from his aunt to repay an outstanding loan from the Bank of Highland Park, to pay off some bills, and help pay for his daughter's college expenses. Petitioner was living in a one-bedroom apartment, paying rent of $675 per month.

At the time of the dissolution, respondent was a part-time receptionist for a dentist and her 1983 tax return reported wages of $3,960 from this job and $3,243 from Four Wheels. At the time of the hearing, respondent was employed as a full-time receptionist for her attorney at a salary of $226.41 net per week. Respondent's 1985 tax return further reported income from a business called Lee Buttons of $1,500, and wages from Wheels, Inc., of $2,737. Respondent still lived in the marital residence with two of the couple's children.

The trial court found that no substantial change in circumstances had occurred since the entry of judgment of dissolution of marriage which would warrant the reduction of petitioner's unallocated maintenance and child support obligation. The trial court further found petitioner to be in contempt by virtue of having reduced his unallocated maintenance and child support payments to respondent during the pendency of the post-judgment proceedings.

■ Under the Illinois Marriage and Dissolution of Marriage Act, any judgment respecting maintenance or support may be modified only as to installments accruing subsequent to the filing of the motion for modification with due notice by the moving party and only upon a showing of a substantial change in circumstances. (Ill. Rev. Stat. 1987, ch. 40, par. 510.) The trial court's decision as to modification of a maintenance award will not be disturbed absent an abuse of discretion. *In re Marriage of Logston* (1984), 103 Ill. 2d 266, 469 N.E.2d 167.

■ On appeal, petitioner first challenges the trial court's comparison procedure for determining whether there had been a substantial change in circumstances. Petitioner claims the trial court erred in utilizing 1982 rather than 1981 for comparison to his present circumstances. He maintains that because the separation agreement was entered into in May 1982, his ability to pay was premised on income he earned in 1981 and any figures set forth for 1982 were only projection or speculation.

On May 28, 1982, before entering the judgment of dissolution, the trial court held a proveup hearing for purposes of approving the

separation agreement. Notably, at the prove up, petitioner testified regarding a decline in his business, specifically that business in 1982 was down 25% from 1981. In spite of this deterioration in his primary business, petitioner willingly agreed to total maintenance and support payments for a period of approximately 10 years. Petitioner testified that he thought the agreement was reasonable, fair and equitable.

We acknowledge that the trial court did make specific findings regarding petitioner's income for 1982, the year in which the marriage was dissolved, and used these findings for comparison to determine petitioner's change in circumstances. The trial court, however, also considered petitioner's testimony during several days of hearings regarding the nature of his business practices and the current status of his business affairs. The trial court had before it petitioner's testimony at the prove up in 1982 regarding his income in 1981 and 1982, and thus was aware of the decline in income from 1981 to 1982. The trial court took note of petitioner's assets and net worth to determine that overall he had not undergone a substantial change in circumstances. We cannot say that the trial court's use of 1982 income figures in addition to all the other evidence heard and considered was error or an abuse of its discretion.

■ Petitioner next argues that his sharp economic reversals and financial hardships warrant a finding of substantial change in circumstances. Illinois cases have held that economic reversals as a result of changes of employment or bad investments may constitute a material change in circumstances sufficient to warrant a modification of a child support order, if made in good faith. *Coons v. Wilder* (1981), 93 Ill. App. 3d 127, 416 N.E.2d 785; *In re Marriage of Ebert* (1980), 81 Ill. App. 3d 44, 400 N.E.2d 995; *In re Marriage of Uphoff* (1980), 80 Ill. App. 3d 145, 398 N.E.2d 1243.

■ Petitioner maintains that his unfortunate business investments fall within the criteria of the good-faith test. The cases relied on by petitioner where a petition for modification was granted are distinguishable from the present case. In *Coons v. Wilder,* the court found that the trial court should have considered that petitioner was unemployed and without substantial income due to enrollment in law school and an $18,000 investment loss. Other cases in which modification of support obligations has been found appropriate are where the supporting spouse has suffered economic setback resulting from investments (*Elizer v. Elizer* (1976), 36 Ill. App. 3d 552, 344 N.E.2d 493), or has encountered a reduction in income because of a change in employment or occupation (*In re Marriage of Kowski* (1984), 123

Ill. App. 3d 811, 463 N.E.2d 840). In *Kowski*, the supporting spouse terminated his previous employment and bought into a new company in the same industry. The record showed the change in employment was prompted by a concern over his health and lack of job security. The supporting spouse had also reached a reasonable conclusion that an extended job search to find comparable employment at a similar salary would be fruitless.

Here, petitioner did not change employment other than to vary the interests he owned and his participation in various business concerns. While petitioner indicated losses on certain business ventures, his overall employment and investment scheme continued. We are not making a finding that petitioner's actions were not in good faith. However, we do not believe that the trial court abused its discretion or ruled against the manifest weight of the evidence by finding insufficient evidence of a substantial change in circumstances.

At the time petitioner entered into the separation agreement, he assumed full responsibility for at least $625,000 in liabilities connected to his various business concerns. He claims on appeal that the trial court failed to consider his total debt at the time of the post-dissolution proceedings. We disagree. The trial court was aware of his liabilities at the time of the hearing. The record clearly indicates that a substantial portion of petitioner's debt was new debt, incurred since the time of the judgment. In the breakdown of liabilities at the time of hearing, petitioner noted a liability of $225,000 from Apple Rent-A-Car. Although petitioner stated that he did not invest any money in Apple, he did personally sign a note in this amount to obtain financing for the concern. He also testified that he worked for Apple for three months without receiving a salary and at the time of the hearing was receiving a salary of $555 net per week.

Petitioner's breakdown of liability also lists loans from Bank Leumi for Gold Coast Leasing of $383,000. Petitioner estimated the value of the vehicles owned by Gold Coast Leasing to be approximately $310,000. Petitioner chose to voluntarily incur liability on behalf of Apple and Gold Coast with knowledge of his obligation to make maintenance and support payments. They have questionable effect on petitioner's actual net worth and must be considered in relation to the debt outstanding at the time of the divorce judgment.

Petitioner also challenges as arbitrary and without any basis in fact a finding by the trial court that several of his losses were "paper losses." We find no basis in the record on which to disagree with the trial court.

Petitioner further claims that the focus of the trial court should

have been the change in petitioner's income and not his net worth because the parties did not contemplate that petitioner would have to liquidate assets to meet his obligations under the separation agreement. We disagree. In the same manner that petitioner urges consideration of his total debt, the trial court was entitled to consider evidence of his net worth.

Several financial statements were admitted in evidence. On a sworn financial statement to the Bank Leumi, prepared one month prior to the petition for modification, petitioner listed his annual income to be $100,000 plus a $10,000 bonus, $10,000 from interest on divided income and $3,000 in real estate income for a total income of $125,000. In addition, he listed total assets of $1,437,500, with liabilities of $104,100. Petitioner clarified a few items on this financial statement under cross-examination, but even by his own explanation after those clarifications, he admitted to having a net worth of $990,000.

The trial court heard and saw all the evidence. Petitioner's financial statements and tax returns were before the court. Petitioner admitted to frequent overinflating of asset valuations and income statements in order to procure additional financing. The trial court was entitled to consider this testimony in determining petitioner's overall credibility. Petitioner testified that he did not know his net available dollars for spending, yet he spent between $20,000 and $30,000 of the proceeds from the sale of his Florida home and later testified that he sold his stock in a restaurant enterprise for $18,000 net and spent that money. Thus the trial court found that petitioner suffered no visible financial hardship. Furthermore, because the record shows no evidence of default or missed payments on petitioner's other obligations, we infer that petitioner was current on all his other debts.

We find no evidence that the trial court failed to consider changes in respondent's employment. The trial court properly considered both parties' incomes and changes in income, as well as petitioner's actual investment losses and his net assets and liabilities. A review of this evidence leads us to the conclusion that the trial court did not abuse its discretion or rule against the manifest weight of the evidence in finding no substantial or material change in circumstances.

Petitioner also contends that the trial court abused its discretion in finding him in contempt of court by virtue of his having reduced his maintenance and support payments without authorization. For the same reasons that we find the trial court properly denied the petition for modification, we also find that petitioner has failed to

satisfactorily establish that his failure to pay was due to his financial inability to pay.

For the reasons stated, the judgment of the circuit court of Cook County denying the petition for modification and finding petitioner in contempt of court is affirmed.

Judgment affirmed.

WHITE, P.J., and RIZZI, J., concur.