*In re* MARRIAGE OF ELLEN (NALDER) LAVELLE, Petitioner-Appellee, and KENNETH JOHN NALDER, Respondent-Appellant.

Fifth District   No. 5—89—0600

Opinion filed December 21, 1990.

Gerald S. Reed and Jonathan Hurst, both of Reed, Heller & Mansfield, of Murphysboro, for appellant.

Treva O'Neill, of O'Neill & Colvin, of Carbondale, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Respondent, Kenneth John Nalder, appeals from an order of the circuit court of Jackson County denying his petition to modify child support, granting the petition for rule to show cause of petitioner, Ellen (Nalder) Lavelle, and awarding attorney fees. In this cause, respondent raises two issues: (1) whether the trial court abused its discretion in denying his motion to modify child support, and (2) whether the trial court erred in finding respondent in contempt for failing to pay child support and then awarding petitioner attorney fees. We reverse and remand.

The marriage of the parties ended on October 29, 1985, by the entry of a judgment of dissolution. This judgment incorporated the terms of a settlement agreement reached between the parties. It provided custody of the parties' two minor children to petitioner and required respondent to pay child support initially in the amount of $250 per month per child, but to increase to $315 per month per child on January 1, 1987. Respondent also agreed to maintain medical insurance on the children and to be responsible for noncovered routine

medical, dental and optical expenses. On October 30, 1987, the judgment of dissolution was modified by stipulation of the parties. This modification allowed respondent to continue to pay $250 per month per child until January 1, 1989, when this amount would increase to $315 per month per child.

At the time the original judgment of dissolution was entered, respondent was self-employed as the owner of Nalder Stereo, Inc., in Carbondale. He had been the owner and operator of this business for almost 10 years. In December 1988, Nalder Stereo went out of business and filed for bankruptcy. Respondent collected unemployment benefits from January 1989 through April 1989. Respondent's unemployment benefits were approximately $200 per week, $50 of which he contributed toward child support. Apparently, the parties had agreed upon this amount plus 25% of any money respondent made over $200, but no order was ever entered in the court file reflecting this agreement. During this period of unemployment, respondent studied for and passed his Series Seven Securities Test. Additionally, respondent completed testing to obtain an insurance license. In April 1989, respondent began working as a stockbroker at Burley-Shay Investments in Carbondale. On May 16, 1989, respondent filed a petition to modify child support. On July 14, 1989, petitioner filed a rule to show cause alleging failure to comply with prior court orders, specifically: (1) scheduling marital debts on the bankruptcy pleadings, (2) failure to pay child support at the court-ordered level, (3) failure to pay child support through the circuit clerk's office as ordered, (4) failure to maintain health insurance on the parties' two minor children, and (5) failure to make a good effort to find employment. On August 10, 1989, both motions went to hearing.

Respondent testified concerning his income. He testified that his salary at Burley-Shay Investments was based strictly on commission. Respondent introduced evidence that from April 28 through June 21, 1989, he earned $685.89 gross. Respondent stated that he made additional commission money from May 25 through June 9, but that he was not able to locate these records. In any event, respondent stated that whatever money he had made, he would figure out the net amount and send petitioner 25% of it. He would also send petitioner accompanying documentation to let her know how he arrived at the 25% net sum. Respondent stated that he had a bachelor of arts degree in mathematics, but that he had no teaching certificate. He stated that his only employment other than owning Nalder Stereo was as an electronic technician from 1973 to 1978. Respondent stated that he expected his income through Burley-Shay Investments to increase.

After direct examination of respondent, the trial court denied respondent's motion to modify, finding that there was only a temporary reduction in income because respondent expected to increase his income as a stockbroker. The trial court then proceeded on petitioner's rule to show cause. Respondent was called as an adverse witness. He stated that he had a one-twelfth interest in a $60,000 home with his girl friend. He also stated that he had a $200 car payment per month. Respondent's girl friend was helping to support him. In addition, she had made respondent's health insurance payments for his children, but had become upset and had stopped making these payments. Respondent stated that he did not make child support payments through the circuit clerk's office because the parties had agreed that respondent would make the payments directly to petitioner. Respondent also stated that after he filed bankruptcy, he enlisted the aid of a "head hunting" agency in St. Louis, Missouri, to assist him in finding employment in the electronics field; however, this agency was unable to help him find employment.

Petitioner testified that she has asked respondent to make payments through the circuit clerk's office so that she could have an official record of payment. Petitioner stated that since May 1989, she has received $90 in child support. Petitioner is a student and has added the parties' two children to her health insurance plan provided through the university. She also testified that there were outstanding medical bills for the children which were not covered by insurance and which had not been paid by respondent.

At the close of the evidence, the trial court found respondent in contempt for failing to make child support payments through the circuit clerk's office, for failing to maintain health insurance on the parties' two minor children, and for failing to pay additional medical expenses not covered by insurance. The trial court ordered respondent to pay $430 to petitioner for health insurance coverage and to pay the original rate of $630 per month in arrearage for those months in which respondent had failed to make any child support payments. For those months respondent had made payments, the trial court found that petitioner had accepted these payments with the apparent understanding that no further money was due for those months. For those months, the trial court found no arrearage. The trial court also ordered defendant to pay $600 in attorney fees.

The first issue we are asked to address is whether the trial court abused its discretion in denying respondent's motion to modify child support. Respondent argues that the trial court abused its discretion because the evidence clearly showed a substantial change in circum-

.stances and that respondent's inability to pay was not due to any voluntary act by respondent, but rather due to respondent's business going bankrupt. Respondent contends that he was not attempting to avoid his maintenance obligations. Additionally, respondent contends that the trial court abused its discretion in not allowing him the opportunity to complete his evidence. Petitioner responds that respondent failed to make a sufficient showing of a substantial change in circumstances that would warrant a modification in child support. Petitioner concedes that the bankruptcy of respondent's business was unfortunate, but, nonetheless, contends that respondent's decision to change careers and to become an investment broker was his own decision. Petitioner argues that respondent should have attempted to get a job in the electronics field for which he was qualified and which would have provided a regular income, unlike his new career, which was based solely upon commissions. In addition, petitioner complains that respondent voluntarily gave up his unemployment benefits from which he was able to pay $50 per week for support of his children to take a position which had no guaranteed income.

█ █ The Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1989, ch. 40, par. 101 *et seq.*) provides that support judgments "may be modified only as to installments accruing subsequent to due notice by the moving party of the filing of the motion for modification and only upon a showing of a substantial change in circumstances." (Ill. Rev. Stat. 1989, ch. 40, par. 510(a).) The question then is whether respondent's change in employment constitutes a substantial change in circumstances sufficient to warrant a modification of child support. It is well established that child support payments should be reduced where substantial economic reversals result from an involuntary change or loss of employment. (*In re Marriage of Donovan* (1984), 122 Ill. App. 3d 803, 462 N.E.2d 9.) If the employment change is voluntary, the change in employment must be made in good faith and not prompted by a desire to avoid one's child support obligation. (*Coons v. Wilder* (1981), 93 Ill. App. 3d 127, 132, 416 N.E.2d 785, 791.) The decision of the trial court to modify or not to modify child support payments will only be disturbed if such decision is clearly against the manifest weight of the evidence. *In re Marriage of Donovan* (1984), 122 Ill. App. 3d at 805, 462 N.E.2d at 11.

█ In the instant case, respondent's change in employment was due to his stereo business going bankrupt. There were no allegations that respondent deliberately caused his business to fail in order to avoid his support obligations. Contrary to petitioner's assertions that respondent did not attempt to find employment in the electronics

field, the record clearly reflects that respondent enlisted the aid of a firm in St. Louis to help him find a position in the electronics field, but was unable to secure such a position even with the agency's assistance. Respondent then took the requisite courses and tests to become an investment broker. Courts have permitted an ex-spouse to change occupations or to further his education in the hope of improving his prospects for the future and have allowed a reduction in income until the new occupation becomes lucrative. See *Coons v. Wilder* (1981), 93 Ill. App. 3d 127, 416 N.E.2d 785.

■ In the instant case, respondent believes that his new position as an investment broker will bring him financial success in the future. However, at the time of the hearing, respondent's income was nowhere near the level it would need to be in order to pay the $630 per month in child support as previously agreed upon and ordered by the court. We also note that respondent was not allowed to complete his evidence at the hearing on his motion to modify. Respondent was the first witness to testify. Before petitioner was even given the opportunity to cross-examine, and before respondent was allowed to present other witnesses, the trial court declared that there had been no proof presented of a change in circumstances which would allow for modification of support. On the limited evidence allowed, we find that respondent demonstrated that there was a substantial change in his circumstances that would warrant a reduction or modification of his support obligations. We, therefore, find that the trial court abused its discretion in denying respondent's motion to modify child support and also erred in denying respondent the opportunity to complete his evidence.

Petitioner analogizes the instant case to two cases in which the former husbands had sought a reduction in either maintenance or child support obligations and were denied such reductions even though they did, in fact, have a loss of income. We, however, find both cases distinguishable from the instant case. In *In re Marriage of Ingram* (1989), 185 Ill. App. 3d 395, 541 N.E.2d 731, the former husband, a physician, filed a petition seeking termination of maintenance payments to his former wife because the former wife had obtained employment which provided her with enough income to meet her needs and because he had suffered a decrease in income and had incurred financial setbacks which substantially reduced his income. The trial court denied the reduction and found the former husband to be in contempt for his failure to pay. In affirming the trial court, we found that while the record indicated that the former husband had suffered some significant financial misfortune, he had not presented

sufficient evidence of a substantial change in circumstances. The ex-husband had never clearly established his debt, was still a practicing physician with an estimated income of $120,000 per year, and was no longer required to pay child support obligations or to make monthly mortgage payment of $1,000 per month on the family residence. Clearly, the *Ingram* case is not analogous to the instant case, where respondent's business has gone bankrupt and his projected income is unknown and unprojectable.

The other case cited by petitioner is *In re Marriage of Uphoff* (1980), 80 Ill. App. 3d 145, 398 N.E.2d 1243, in which the ex-husband petitioned the court for a reduction in child support payments because his income had been reduced from $2,600 per month to approximately $1,000 per month. The trial court denied the ex-husband's petition and our colleagues in the Third District Appellate Court affirmed, finding that there had not been a substantial change in circumstances to warrant a reduction. In *Uphoff*, the ex-husband had agreed to pay $100 per week per child for the support of three minor children one week after he had voluntarily entered into an agreement with his employer to end his salary. The *Uphoff* court correctly stated:

> "For the appellant to agree to the order he now seeks to modify just a week after signing the termination agreement which serves as the grounds for the sought-after modification is hardly consistent with our understanding of good faith." (80 Ill. App. 3d at 147, 398 N.E.2d at 1245.)

In the instant case, respondent had agreed to the $315 per month per child well before his business entered bankruptcy and there was no evidence that respondent voluntarily chose to have his business fail. Thus, *Uphoff* is also distinguishable.

■ The only other issue we are asked to address is whether the trial court erred in finding respondent in contempt for failing to pay child support and in awarding petitioner attorney fees. The power of a court to enforce payment for child support by contempt is limited to cases of wilful and contumacious refusal to obey the order of the court. (*Giamanco v. Giamanco* (1982), 111 Ill. App. 3d 1017, 1023, 444 N.E.2d 1090, 1095; *Cole v. Cole* (1967), 85 Ill. App. 2d 105, 112-13, 229 N.E.2d 293, 295.) As previously discussed, we do not believe that in the instant case respondent's nonpayment of support was wilful and contumacious. In addition, after a review of the transcript of the contempt hearing, we do not believe that respondent's failure to maintain health insurance or his failure to pay medical expenses not covered by insurance were wilful and contumacious acts. Rather, the record supports respondent's contention that his nonpayment was due

to a lack of sufficient income.

■ The trial court also found defendant in contempt for failing to make child support payments through the circuit clerk's office as ordered. While it is true that respondent did not make his payments through the clerk's office, the record supports respondent's contention that the parties had a mutual agreement whereby respondent would make the payments directly to petitioner. Petitioner stated that she only remembered one "recent" conversation in which she had asked respondent to make payments directly to the circuit clerk's office. While we do not encourage such side agreements between the parties, we cannot agree with the trial court that defendant's failure to make payments through the clerk's office constituted contempt when petitioner at the least acquiesced in such method of payment if not encouraged payment directly to her. Petitioner had only recently asked respondent to make payments through the clerk's office when respondent was in a financial position in which he could not make the payments either directly to petitioner or to the clerk's office. Therefore, we find that the trial court abused its discretion in finding that defendant was in contempt.

■ We also agree with respondent's final contention that the trial court erred in awarding petitioner attorney fees in connection with his petition to modify child support and the petition for contempt. Under section 508(b) of the Act (Ill. Rev. Stat. 1983, ch. 40, par. 508(b)), the court must enter an order requiring the party against whom the proceeding was brought to pay reasonable attorney fees only when the court finds that the failure to comply with the order was without cause or justification. Because we have found that respondent was justified in not making child support payments, we likewise find that the trial court erred in awarding attorney fees to petitioner.

Accordingly, the order of the circuit court of Jackson County is reversed and the cause remanded for further proceedings not inconsistent with this disposition.

Reversed and remanded.

CHAPMAN and WELCH, JJ., concur.