*In re* MARRIAGE OF RUTH H. WALDSCHMIDT, Petitioner-Appellee, and DENIS V. WALDSCHMIDT, Respondent-Appellant.

Fourth District   No. 4—92—0390

Opinion filed February 25, 1993.

8

LUND, J., specially concurring.

Bradley W. Swearingen, of Moehle, Swearingen & Associates, Ltd., of Washington, for appellant.

Richard W. Leiken, of Leiken, Leiken & Leiken, of Eureka, for appellee.

JUSTICE COOK delivered the opinion of the court:

Denis Waldschmidt appeals an order denying his motion to terminate, or in the alternative reduce, his maintenance obligation. We reverse and remand.

Denis and Ruth Waldschmidt were married September 10, 1955. The trial court entered a bifurcated order dissolving the marriage on October 5, 1979. On March 20, 1980, the trial court entered a supplemental order dividing the parties' property and ordering Denis to pay 17% of his gross income per month as maintenance to Ruth. The parties had four children, all of whom had reached majority by the time the supplemental order went into effect. The order of maintenance was indefinite and subject to modification both as to amount and term.

On February 8, 1989, Denis filed a petition to terminate or reduce maintenance based on a substantial change in circumstances. Denis alleged that Ruth's income increased after she inherited a large parcel of farmland and that his income decreased following his retirement. On April 27 the trial court entered the following docket order: "Evid hrd—no basis to change because of any factor but her inherited in-

come of $10,0000/yr. [*sic*] Memos to be sub, 14 days ***." Following that order Denis submitted a memorandum of law arguing that Ruth's inheritance was a substantial change in circumstances which warranted modification or termination. The trial court entered an order on May 31 reducing maintenance to 7½% of Denis' gross income, based on a finding that Ruth's increased income constituted a sufficient change in circumstances to warrant reduced maintenance. The trial court stated in its order, "I conclude that the additional inherited income of Mrs. Waldschmidt may provide a basis for the substantial change element. I find this level of increase to constitute a substantial change in circumstances." Neither party appealed.

On November 21, 1990, Denis filed another petition (amended February 24, 1992) to terminate maintenance based on Ruth's increased income and his own reduced income. At a hearing on the petition, the parties testified regarding their gross income (excluding maintenance payments) as follows:

| | Ruth | | | Denis | |
|---|---|---|---|---|---|
| 1988 | farm earnings | 10,059 | 1988 | pension | 0 |
| | wages | 12,150 | | wages | 44,145 |
| | miscellaneous | 1,904 | | miscellaneous | 1,720 |
| | GROSS INCOME | $24,113 | | GROSS INCOME | $45,865 |
| 1989 | farm earnings | 12,449 | 1989 | pension | 17,100 |
| | wages | 14,051 | | wages | 6,756 |
| | miscellaneous | 2,596 | | miscellaneous | 3,181 |
| | GROSS INCOME | $29,096 | | GROSS INCOME | $27,037 |
| 1990 | farm earnings | 12,881 | 1990 | pension | 18,300 |
| | wages | 15,130 | | wages | 404 |
| | miscellaneous | 3,513 | | miscellaneous | 2,714 |
| | GROSS INCOME | $31,524 | | GROSS INCOME | $21,418 |
| 1991 | Ruth testified her gross income in 1991 would be no less than it was in 1990. | | 1991 | pension | 19,200 |
| | | | | wages | 120 |
| | | | | miscellaneous | 2,391 |
| | | | | GROSS INCOME | $21,711 |

The evidence also showed that Ruth's net income, less living expenses, plus maintenance received, yielded a surplus of $1,066 per

month; Denis' net income, less living expenses, less maintenance paid, yielded a surplus of only $203 per month. At the hearing the trial court determined that maintenance should not be terminated based on Denis' retirement, stating: "That isn't the issue here today. That issue is long behind us. That's been decided. It hasn't been appealed, it's final." On April 13, 1992, the trial court issued an order denying Denis' petition to modify or terminate maintenance finding as follows:

> "The additional *income* of [Ruth] which results from her earlier inheritance continues to be a relevant factor in determining the level of maintenance \*\*\*.
>
> Once again, it seems appropriate in this particular situation to consider a percentage rate for maintenance. This eliminates the need to consider 'substantial' changes in [Denis'] income since that issue is self[-] adjusted by the percentage order.
>
> That leaves the issue of whether or not there has been a substantial change in [Ruth's] income \*\*\*. \*\*\* Since this rate of increase is only slightly above the rate of inflation, I do not conclude that it qualifies as a substantial increase.
>
> Therefore, the percentage allocation is adequate adjustment for the changes of income of [Denis], if any." (Emphasis in original.)

On appeal, Denis alleges the trial court abused its discretion by failing to either terminate or reduce his maintenance obligation. Although section 510(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1989, ch. 40, par. 510(a)) refers to modification, not termination, the section has been read to allow termination of maintenance. (*Ingrassia v. Ingrassia* (1987), 156 Ill. App. 3d 483, 488, 509 N.E.2d 729, 733-34.) The decision to modify or terminate maintenance is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. (*In re Marriage of Henzler* (1985), 134 Ill. App. 3d 318, 323, 480 N.E.2d 147, 150; *In re Marriage of Lenkner* (1993), 241 Ill. App. 3d 15, 18.) A maintenance award can be modified either when the needs of the spouse receiving support change or the ability of the other spouse to pay maintenance changes. (*In re Marriage of Garelick* (1988), 168 Ill. App. 3d 321, 326, 522 N.E.2d 738, 742.) The party seeking modification of a maintenance order bears the burden of showing a substantial change in circumstances. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 287, 469 N.E.2d 167, 176; *Lenkner*, 241 Ill. App. 3d at 18-19.) In order to determine whether

and to what extent maintenance should be modified, a trial court should consider the same factors it considers in making an initial award. *In re Marriage of Krupp* (1990), 207 Ill. App. 3d 779, 792, 566 N.E.2d 429, 437.

A maintenance award is *res judicata* of the then-existing facts, and changed circumstances justifying modification of maintenance must occur after the award. (*In re Marriage of Zeman* (1990), 198 Ill. App. 3d 722, 733, 556 N.E.2d 767, 773; *Sullivan v. Sullivan* (1981), 98 Ill. App. 3d 928, 932, 424 N.E.2d 957, 960.) Courts in modification proceedings allow the parties to present only the evidence going back to the latest petition for modification in order to avoid relitigation of matters already settled, at least where modification was allowed on the last petition. (*In re Marriage of Pedersen* (1992), 237 Ill. App. 3d 952, 957.) Maintenance payments have already been modified once to reflect the fact that Ruth inherited an interest in a farm which has generated a substantial yearly income. When the trial court modified maintenance on May 8, 1989, it relied on facts presented showing Ruth earned income of approximately $10,000 per year from the farm she inherited. That figure is reflected in her 1988 tax return as farm income of $10,059. Although the hearing was held in May 1989, the last tax return considered was the 1988 tax return, which had just been filed. When considering Denis' current petition in April 1992, therefore, the trial court should have considered the increases in Ruth's income shown in her 1989 and 1990 tax returns, the most recent income information presented. Based on those figures, Ruth's gross income (excluding maintenance received) increased 21% from $24,113 in 1988 to $29,096 in 1989, and increased another 8½% in 1990 to $31,524. In this petition, the trial court only considered the 8½% increase in Ruth's income in 1990.

While the concept of *res judicata* does apply to modifiable orders, it must be carefully applied. Where a petition to modify is heard late in the year, the parties could present evidence of their income subsequent to the period covered by their latest tax return, but may choose not to, because that information is uncertain or is not believed to be worth updating. The fact that developments after the filing of the return could have been presented does not necessarily require that those developments not be considered on a subsequent petition. The import of events occurring shortly before the filing of a petition to modify may not be fully ascertainable at the time the petition is argued. Further, reduced income of a party may not be a substantial change in circumstances when it occurs, but

may be a substantial change in circumstances after it has continued for several years. While a court should not allow parties a second opportunity to argue that facts previously presented now justify a modification of maintenance, neither should a court refuse to consider facts not previously presented to it unless the parties had a fair opportunity to present them.

■■ Although Denis had recently retired when maintenance was modified on May 8, 1989, the trial court stated it did *not* base the modification on any expected decrease in Denis' gross income; the decrease in maintenance was based solely on Ruth's increased income. Nevertheless, at the hearing on the February 24, 1992, petition the trial court emphatically stated the issue of Denis' decreased income due to his retirement had previously been decided, and denied Denis' motion to modify or terminate. The trial court further held there was no need to consider substantial changes in Denis' income "since that issue is self[-]adjusted by the percentage order." The trial court's determination that *res judicata* barred any consideration of Denis' retirement is contrary to the manifest weight of the evidence. Even were we to find the fact of Denis' retirement to be *res judicata*, there has been a decrease in Denis' gross income from $27,037 in 1989 to $21,418 in 1990, caused by a decrease in his wages for part-time work, which must be considered by the trial court.

■■ We reject the trial court's ruling that there is no need to consider any substantial changes in Denis' income because maintenance self-adjusts as a percentage of Denis' gross income. Under that reasoning maintenance could never be terminated; even if Denis had an annual income of only $500 Ruth would be entitled to 7½% of it. A trial court may not escape its duty to determine whether maintenance should be terminated or otherwise modified by ordering maintenance as a percentage of income. In determining whether to modify or terminate maintenance, the trial court must consider all relevant factors, including the ability of a spouse to pay maintenance and meet his needs. (*Krupp*, 207 Ill. App. 3d at 792-93, 566 N.E.2d at 437; see Ill. Rev. Stat. 1989, ch. 40, par. 504(b)(6).) By its self-adjusting order the trial court may have determined what it felt an appropriate level of maintenance should be, but it certainly did not consider whether maintenance should be terminated in its entirety. There comes a point when a payor's income decreases to such a level that it would be an abuse of discretion not to terminate a maintenance award. Maintenance awards set as a percentage of a payor's income present many problems; among

other things, it is difficult to compute the dollar amount of maintenance owed each month, especially in an enforcement action for long delinquent payments. The practice should be discontinued, as it has been with child support orders. See Ill. Rev. Stat. 1989, ch. 40, par. 505(a)(5); *In re Marriage of Wassom* (1988), 165 Ill. App. 3d 1076, 1082, 519 N.E.2d 1147, 1151.

Maintenance should be terminated, even after a long-term marriage, when the spouse receiving the maintenance has become virtually self-sufficient. (*Henzler*, 134 Ill. App. 3d at 322, 480 N.E.2d at 149-50.) As of 1990 (the most recent year in which income figures were available for both parties) Ruth's gross income (excluding maintenance received) had risen to $31,524, while Denis' gross income had dropped to $21,418. The parties' living expenses were approximately equal. The record also shows that Ruth owned substantially greater assets than Denis. Furthermore, although Denis had retired and Ruth still worked, Ruth's gross income will be approximately the same as Denis' gross income upon her retirement. A maintenance order requiring the financially disadvantaged spouse to pay maintenance to the financially advantaged spouse cannot be justified, at least not in the facts of this case, and the order here should have been terminated. There is no indication in the evidence that the situation of the parties is uncertain, which might justify an order abating, rather than terminating, maintenance.

■■ We must also consider the claim that Denis' retirement was in bad faith. Employment changes that are voluntary must be made in good faith and not prompted by a desire to avoid maintenance obligations. (See *In re Marriage of Eisenstein* (1988), 172 Ill. App. 3d 264, 270, 526 N.E.2d 496, 500; *In re Marriage of Colombo* (1990), 197 Ill. App. 3d 767, 769, 555 N.E.2d 56, 57; *In re Marriage of Lavelle* (1990), 206 Ill. App. 3d 607, 611, 565 N.E.2d 291, 293.) The record shows that Denis retired at age 55, after 30 years at Caterpillar. Caterpillar established a program which encouraged employees to retire after 30 years. Denis took advantage of this option after considering his long working hours and minor health concerns. No evidence has been presented indicating that Denis' retirement was in bad faith or that it was for the purpose of evading his maintenance obligations.

For the foregoing reasons, we reverse the trial court's denial of Denis' petition and remand to the trial court with instructions to enter an order terminating maintenance in accordance with this order.

Reversed and remanded.

KNECHT, J., concurs.

JUSTICE LUND, specially concurring:

I concur with Justice Cook's results, but do not readily accept his suggestion that percentage awards of maintenance be discontinued. Percentage awards were approved by our court in *In re Marriage of Stegbauer* (1980), 84 Ill. App. 3d 83, 404 N.E.2d 1140. In my opinion, the following from the text of H. Joseph Gitlin on divorce suggests the benefits of percentage agreements and the problems with court-ordered percentage maintenance awards:

"Certainly, the goal of eliminating the need for modification proceedings for an increase or decrease in maintenance is a desirable one. There is no reason why the parties, by agreement, cannot have automatic adjustments in the maintenance level based on the obligor's income, the recipient's income, a combination of the two, the Consumer Price Index, or such other creative conditions as agreed to by the parties. A function of a well-drafted marital settlement agreement is to avoid future litigation between the parties. Automatic adjustments in the maintenance level, as in the child support level, serve that function. The court, however, when it imposes its judgment upon the parties, is bound by different rules than are the parties when they make an agreement. Modifications in maintenance are governed by section 510(a), which requires that there be proof of a change of circumstances since the entry of the last maintenance order before maintenance can be modified. To support a request for increased maintenance, the recipient must show increased expenses and the ability of the obligor to pay an increased amount of support. The mere fact that the obligor's income has increased substantially since the divorce is not a basis for the recipient to receive an increase in maintenance, since the life[-]style amount to which the recipient is entitled is measured by the life[-]style that was established during the marriage, and not the life[-]style in which the obligor can afford to keep the recipient after the divorce. Thus, basing an increase in support merely on the increased income of the maintenance obligor, as will occur when maintenance is based on a percentage of the income of the obligor, violates the rule that the wife must

show an increased need." (1 H. Gitlin, Gitlin on Divorce §15.12(F), at 359-60 (1991).)

Perhaps in the proper case we should carefully reconsider Justice Trapp's dissent in *Stegbauer* (84 Ill. App. 3d at 86, 404 N.E.2d at 1142 (Trapp, J., dissenting)).